Emmanuel A. DARAMOLA, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

Civ. A. No. 88–2358.

United States District Court, W.D. Pennsylvania.

Jan. 4, 1995.

See also 757 F.Supp. 657.

Daniel Ernsberger, Behrend & Ernsberger, Pittsburgh, PA, for plaintiff.

J.W. Montgomery, III, John D. Goetz, and Ned L. Spells, Jr., Jones, Day, Reavis & Pogue, Pittsburgh, PA, for defendant.

## OPINION

McKELVIE, District Judge (sitting by designation).

This is an employment discrimination case. Emmanuel A. Daramola alleges Westinghouse Electric Corporation wrongfully discriminated against him on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. At the conclusion of trial in October of 1994, the jury returned a verdict in favor of Westinghouse on the Human Relations Act claims, and the court made findings and entered judgment in favor of Westinghouse on the Civil Rights Act claims.

This is the court's decision on Westinghouse's motion for an award of attorneys' fees.

*FACTUAL BACKGROUND*

In a complaint filed in October of 1988, Daramola alleged, among other claims, that in April of 1986 Westinghouse wrongfully terminated him from his employment as an engineer. He alleged that while Westinghouse reported to him he was terminated due to unauthorized use of a company photocopy machine, the company had in fact terminated him because of his race and national origin: he is black and was born and raised in Nigeria.

Westinghouse denied Daramola's claims of wrongful discrimination and eventually moved for a summary judgment challenging the factual basis for his case. Westinghouse argued Daramola was terminated in April of 1986 after he and Robert Almond (a former Westinghouse employee) entered a Westinghouse facility over a weekend and made thousands of copies of papers relating to a private business called Daramola Incorporated or Semeco Incorporated. Furthermore, Westinghouse argued there was no evidentiary basis for believing that Daramola was terminated based on his race or national origin.

In his pretrial statements outlining the basis for his claims and in briefing in opposition to Westinghouse's motion, Daramola reported he had demonstrated good engineering work at Westinghouse; as evidence of his excellent performance, he noted that he had received the Westinghouse Bronze Medal for "Excellence in Engineering." Daramola denied being involved in photocopying of Semeco documents, and noted that Almond was buying Semeco from his brother Edward Daramola. He also argued that although Almond had previously admitted these facts, the two had since had a falling out, and Almond was now collaborating with Westinghouse and would testify that he had done the copying with Daramola.

The court denied Westinghouse's motion for a summary judgment, finding there were genuine issues of fact material to Westinghouse's alleged discriminatory treatment of Daramola during his employment and to the circumstances of his discharge.

On October 3, 1994, the case was brought to trial before a jury. Some highlights of the evidence offered at trial include the following:

1. *The Excellence in Engineering Medal.* During the presentation of his case, Daramola showed the court and the jury the medal he testified he received from Westinghouse for excellence in engineering. However, Westinghouse established through the testimony of numerous witnesses that Daramola's medal was actually one of hundreds of key fobs that had been distributed to Westinghouse employees as a promotion relating to the 1986 Olympic games.

2. *Robert Almond's March 30, 1986 letter.* Daramola offered into evidence a March 30, 1986 letter purportedly signed by Robert L. Almond, by which Almond reported that he had done the copying at Westinghouse, that he was buying Semeco from his friend and its owner Edward Daramola, and that to the best of his knowledge, Emmanuel Daramola was not aware the copying was being done and was not the owner of the copied materials. Westinghouse called Almond to testify and established that he had not written the letter, he had done the copying with Emmanuel Daramola, and he did not know an Ed-

ward Daramola. Westinghouse also offered evidence to establish that Emmanuel Daramola and Almond entered and left the Westinghouse building at the same times on those days and that both were seen at the photocopiers.

3. *Edward Daramola's Ownership of Semeco.* At trial Emmanuel Daramola testified that he had a brother named Edward and offered into evidence an affidavit from a George O. Daramola, apparently signed in Ado Ekiti, Nigeria. In the affidavit, George Daramola declared he had two sons, Edward and Emmanuel, but that there were no records registering their births. He also declared that under tribal laws, any asset of any family member belongs to the entire family and that the oldest son is the only one permitted to claim ownership of such assets even if they were acquired by a younger person. Thus, although Semeco was a United States corporation and Emmanuel may have been the sole shareholder, officer and director, nevertheless, by the native laws and customs in Nigeria, Edward, as the oldest son, was the Chairman and Chief Executive Officer and owned the corporation. Furthermore, "whenever Edward A. Daramola was not in U.S.A., Emmanuel A. Daramola was prohibited from transacting the Business of Semeco without first consulting with Edward." Emmanuel Daramola relied on this affidavit to confirm he had a brother and to show that it was his brother who was responsible for the photocopying with Almond. He also testified that his brother was not available to corroborate his testimony because his brother was dead, and Daramola attributed his death to Westinghouse's counsel.

Through a witness called from the United States Immigration and Naturalization Service, Westinghouse established that although the United States government keeps a record of foreign nationals who enter the country, it had no record of an Edward Daramola ever entering or leaving the United States.

Following the presentation of the evidence, the jury returned a verdict in favor of Westinghouse and against Daramola on his Pennsylvania Human Relations Act claims. Upon receiving that verdict, the court found plaintiff had failed to carry his burden in showing

Westinghouse had wrongfully discriminated against him on the basis of race or national origin. In reporting this decision, the court told the parties that the court found the plaintiff's testimony was not believable and was clearly untrue. Further, the court apologized to Westinghouse for a breakdown in the civil justice system that allowed Daramola's lack of truthfulness to keep this case alive for six years.

Westinghouse then moved for an award of fees incurred for work done by its trial counsel on October 3, 4, 5 and 6, 1994. It seeks an award of $18,027.00, for 35 hours by J.W. Montgomery, III at $208 an hour, for 44 hours by John D. Goetz at $130 an hour, for 38 hours for Ned Spells at $85 an hour, and for 23.75 hours for Jennifer L. Kosubinsky at $79 per hour.

*DISCUSSION*

■ The court may award attorney's fees to a prevailing defendant in a Title VII case under 42 U.S.C. § 2000e–5(k) upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even thought not brought in subjective bad faith. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

■ In this case, Daramola fabricated evidence and lied to the court. In doing so, he kept his false claims of discrimination and this lawsuit alive for six years, diverting the court from the truth and hindering the prompt resolution of the case. Daramola imposed a tremendous and unfair burden on Westinghouse and its employees, both with false and unfounded claims and by his willingness to lie and fabricate evidence so as to use this litigation to punish Westinghouse. Through his dishonest conduct, Daramola has caused Westinghouse to be subjected to the very type of "burdensome litigation having no legal or factual basis" from which Congress sought to protect Title VII defendants. *Id.* at 420, 98 S.Ct. at 700.

The court finds Daramola acted in bad faith, that his claims of wrongful discrimination were without foundation, and that his claims were frivolous in that they were based on lies and false and fraudulent testimony.

Consequently, the court will order Daramola to pay Westinghouse the fees it seeks. In granting this relief, the court notes that the amounts sought appear to be a small fraction of the actual fees and costs Westinghouse incurred over the past six years in defending itself in this case. The rates sought by Westinghouse are reasonable and the hours identified are fair. The clerk is directed to enter judgment in favor of Westinghouse Electric Corporation and against Emmanuel A. Daramola in the amount of $18,027.