[No. B131078. Second Dist., Div. Seven. Aug. 21, 2001.]

SHARI COHEN ROSENMAN, Plaintiff and Appellant, v. CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Plaintiff and Appellant.

Krakow & Kaplan and Marvin E. Krakow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Browne & Woods, Allan Browne, Edward A. Woods and Marcy Railsback for Defendants and Respondents.

**OPINION**

**JOHNSON, Acting P. J.**—This is an employment discrimination case under the California Fair Employment and Housing Act. In the unpublished portion

of this opinion, we hold the trial court did not commit prejudicial error in admitting certain documents used by respondents to impeach appellant's testimony. Accordingly, we affirm the verdict in favor of respondents. However, in the published portion of the opinion, we reverse the award of attorney fees to respondents, because the trial court failed to find appellant's case was frivolous, unreasonable, or totally without foundation, and because based on the record no such findings reasonably could have been made.

## FACTS AND PROCEEDINGS BELOW

Plaintiff and appellant Shari Cohen Rosenman was hired by the law firm of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,[1] which attracts high-profile clients and handles complex litigation, as an associate in the litigation department in 1989. As an associate, Rosenman worked long hours under intense pressure and consistently received favorable performance reviews and bonuses. Her career plan was to become a partner in the Firm, and ultimately to become a judge. In January 1996, Rosenman achieved a long-sought goal when she became a nonequity partner in the Firm. As a nonequity partner, Rosenman received an annual base salary of $120,000 plus so-called "special distributions" based on her performance and the Firm's profits.

The same month she became a partner, Rosenman became pregnant with her first child. She notified members of the Firm about her pregnancy between February and March 1996. Early in her pregnancy, Rosenman experienced severe morning sickness, fatigue and back problems. In March 1996, Rosenman's pregnancy-related health issues created a temporary inability to work and sit for long hours. Rosenman testified at trial she verbally requested a reduction in her workload or more help from associate attorneys, but no such reduction or assistance was forthcoming. She ultimately resorted to requesting a reduction in workload in writing, an unusual action given the Firm's culture of avoiding written communications regarding personnel matters.

Rosenman worked in the office throughout her pregnancy until late August when her doctor ordered bed rest. She worked at home for the next two weeks, at which time her daughter was born, five and a half weeks early. In accordance with the Firm's maternity leave policy, Rosenman was given three months off with pay, with the option of taking an unlimited amount of additional time off without pay.

---

[1]We refer to the Christensen firm, along with the individual respondents, collectively as "the Firm."

During her maternity leave, Rosenman had a conversation with the Firm's managing partner in which she was given the option of returning to the Firm part-time, although apparently such an option would have required her to give up her partnership.[2] During this conversation, Rosenman expressed her displeasure at the Firm's failure to pay a special distribution which had been paid to other members of her partnership class.[3] She was eventually informed she was not paid the special distributions due to performance problems which had arisen during her pregnancy, including missing the deadline for filing an appellate brief on behalf of one of the Firm's clients.

Based in part on the Firm's failure to pay her the special distributions, Rosenman began looking for a job during her maternity leave, and on January 2, 1997, she resigned from the Firm. In January, she began work as a research director at a legal research network; however, she left the position two to three months later. At the time of trial, she was working part-time for a small civil litigation firm, which she considered a step down from the "first tier" practice of the Firm.

Rosenman brought suit against the Firm for pregnancy discrimination and related claims under the Fair Employment and Housing Act (FEHA). The Firm's motion for summary judgment was denied and the case proceeded to trial. At trial, Rosenman contended the firm failed to comply with her reasonable requests for accommodation of her pregnancy-related health problems, and testified the Firm's response to her request for a reduced workload was to increase her workload by assigning her 12 new cases to work on. She also contended she was discriminated against because, contrary to the Firm's policy of paying all nonequity partners the same compensation, she was not paid certain "special distributions" received by other nonequity partners. In addition, she contended she was retaliated against for raising concerns about ethical lapses on the part of certain of the Firm's senior partners. Finally, she contended the Firm's conduct surrounding her pregnancy and maternity leave constituted a constructive discharge.

In addition to her own testimony, Rosenman presented the testimony of other current and former Firm lawyers, her husband, and expert witnesses on

---

[2] While Rosenman consistently characterized this conversation as "threatening to take away her partnership," the record reveals the managing partner merely responded in the affirmative to her statement "I assume I would have to give up my partnership if I returned to work part time."

[3] In law firm jargon, lawyers who become partners in the same year are referred to as belonging to the same "partnership class." Although Rosenman billed fewer hours in 1996 than any of her previous six and a half years of employment, she received her nonequity partner salary of $120,000 ($10,000 per month) plus two "special distribution" payments totaling $30,000. However, while others in Rosenman's partnership class received two additional special distribution payments while Rosenman was on maternity leave, Rosenman did not receive those payments.

the subjects of accommodation and economic damages. In addition to testimony by the individual defendants and others, the Firm introduced documents at trial to impeach Rosenman's testimony about her workload and the manner in which nonequity partners were compensated.

The Firm moved for nonsuit at the close of Rosenman's evidence, and the trial court denied the motion. After deliberations, the jury voted 10-2 in favor of the Firm. The Firm moved for an award of attorney fees under FEHA, and the trial court awarded the Firm $150,000. Rosenman timely appeals.

## DISCUSSION

### I. The Trial Court Did Not Commit Prejudicial Err in Admitting the Firm's Impeachment Evidence.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### II. The Trial Court Abused Its Discretion in Awarding Attorney Fees in Favor of the Firm.

■  Having concluded the judgment in favor of the Firm must stand, we turn to the question whether the trial court abused its discretion in ordering Rosenman to pay the Firm $150,000 in attorney fees. We answer this question in the affirmative.

#### A. A Successful Defendant Is Entitled to Attorney Fees Under FEHA Only in the Rare Case in Which the Plaintiff's Action Was Frivolous, Unreasonable, or Without Foundation.

■  In *Cummings v. Benco Building Services*, we explained the standards to be applied in determining the propriety of an attorney fees award under the employment discrimination statutes: "Attorney fees are allowable as costs to a prevailing party when authorized by statute. (Code Civ. Proc., §§ 1021, 1033.5, subd. (a)(10)(B).) Government Code section 12965 authorizes an award of attorney fees and costs to the prevailing party in any action brought under the California Fair Employment and Housing Act (FEHA). That section provides in pertinent part: 'In actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs except where such action is filed by a public agency or a public official, acting in an official capacity.'

*See footnote, *ante*, page 859.

[¶] ■ The language, purpose and intent of California and federal anti-discrimination acts are virtually identical. Thus, in interpreting FEHA, California courts have adopted the methods and principles developed by federal courts in employment discrimination claims arising under title VII of the federal Civil Rights Act, 42 United States Code section 2000e et seq. . . . [Citations.] ■ A trial court's award of attorney fees and costs under the section is subject to an abuse of discretion standard. [Citations.]"[24]

We further noted "The standard a trial court must use in exercising its discretion in awarding fees and costs to a prevailing defendant was set forth in the Supreme Court's decision in *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [98 S.Ct. 694, 54 L.Ed.2d 648]."[25] In *Christiansburg*, the Supreme Court held a prevailing plaintiff in an antidiscrimination case " 'should ordinarily recover an attorney' fee unless special circumstances would render such an award unjust. [Citation.]' " [26] However, it declined to use a similar standard in determining whether to award attorney fees to a prevailing *defendant*, because "there are at least two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant. [¶] First, . . . the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.' [Citation.] Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. . . . 'these policy considerations which support the award of fees to a prevailing plaintiff are not present in the case of a prevailing defendant.' [Citation.] A successful defendant seeking counsel fees. . . must rely on quite different equitable considerations."[27] It cautioned, however, "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."[28]

The *Christiansburg* court concluded "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without

---

[24]*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386-1387 [15 Cal.Rptr.2d 53] (hereafter *Cummings*).
[25]*Christiansburg Garment Co. v. EEOC, supra,* 434 U.S. 412 (hereafter *Christiansburg*).
[26]*Christiansburg, supra,* 434 U.S. at pages 416-417 [98 S.Ct. at page 698].
[27]*Christiansburg, supra,* 434 U.S. at pages 418-419 [98 S.Ct. at page 699].
[28]*Christiansburg, supra,* 434 U.S. at pages 421-422 [98 S.Ct. at page 700].

foundation, even though not brought in subjective bad faith."[29] In *Cummings*, we agreed and cautioned " 'such awards should be permitted "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." ' "[30]

In *Cummings*, we applied this standard and reversed the trial court's award of fees and costs to the prevailing defendant, on the ground the record did not reflect the trial court made the necessary findings concerning the merits of the appellant's discrimination claim.[31] We noted the defendant's successful motion for summary judgment had been affirmed by a divided panel of Division Five of this district, and observed the split in the appellate panel clearly indicated "reasonable minds may differ as to the strength of appellant's case but that it would be unreasonable to conclude appellant's action for age discrimination was frivolous, unreasonable or without foundation where both the majority and the dissent found her claim to have some basis in fact. It therefore follows the trial court erred in presumably finding appellant's claim to be frivolous, unreasonable or without foundation and awarding attorney fees and costs to . . . the prevailing defendant."[32]

B. *A FEHA Plaintiff Who Survives a Motion for Summary Judgment or Nonsuit Is Not Automatically Immune from an Award of Attorney Fees.*

In *Cummings*, the question of attorney fees arose after the defendant obtained a summary judgment in its favor.[33] In this case, by contrast, Rosenman's case survived both a motion for summary judgment and a motion for nonsuit. Although urged to do so by both appellant and amicus curiae, we decline to establish a bright-line rule whereby a plaintiff who survives a motion for summary judgment or nonsuit can *never* be liable for attorney fees. Such a rule would unjustifiably shield those plaintiffs who are able to raise a triable issue of fact, even though it be by means of fabricated evidence and false testimony. If the false and unfounded nature of such a plaintiff's claims is revealed at trial, the prevailing defendant should be able to recoup its attorney fees to the extent the plaintiff is able to pay.

In the federal case of *Daramola v. Westinghouse Electric Corporation*,[34] the plaintiff survived summary judgment by presenting evidence which was

[29]*Christiansburg, supra,* 434 U.S. at page 421 [98 S.Ct. at page 700].
[30]*Cummings, supra,* 11 Cal.App.4th at page 1387 (citing *Christianburg,* citing *Carrion v. Yeshiva University* (2d Cir. 1976) 535 F.2d 722, 727 (hereafter *Carrion*).
[31]*Cummings, supra,* 11 Cal.App.4th at page 1388.
[32]*Cummings, supra,* 11 Cal.App.4th at page 1389.
[33]*Cummings, supra,* 11 Cal.App.4th at pages 1385-1386.
[34]*Daramola v. Westinghouse Elec. Corp.* (W.D.Pa. 1995) 872 F.Supp. 1418 (hereafter *Daramola*).

shown at trial to be fabricated.[35] He also presented additional evidence at trial, which was also shown to be utterly fabricated, to the point "the court apologized to [the defendant] for a breakdown in the civil justice system that allowed Daramola's lack of truthfulness to keep this case alive for six years."[36] Clearly, a bright-line rule precluding an award of fees in favor of the defendant in *Daramola* would have been unjustified and unjust.

Similarly, in *Bond v. Pulsar Video Productions*,[37] the Court of Appeal held "Declarations sufficient to create a triable issue in a summary judgment proceeding may, in the crucible of a trial, be revealed to be spurious and the litigant's claim frivolous, unreasonable and without foundation," thus justifying an award of attorney fees in favor of the defendant.[38] Thus, this court is unprepared to create a bright line shielding survivors of summary judgment motions from attorney fees. Nonetheless, we find ample cause to shield appellant from attorney fees in this case.

### C. The Record Does Not Support a Finding Rosenman's Action Was Frivolous, Unreasonable, or Groundless.

Applying the *Cummings/Christianburg* standard, and rejecting Rosenman's suggested bright-line rule for plaintiffs who survive summary judgment, we turn to the facts of the case before us to determine whether the trial court abused its discretion in awarding attorney fees in favor of the Firm. We conclude it did.

#### 1. The Trial Court Erred in Failing to Make Findings to Support Its Award of Attorney Fees.

Preliminarily, we note the trial court failed to make any findings as to the existence of the *Cummings/Christianburg* criteria. As we noted in *Cummings,* such findings are "necessary" where a trial court awards attorney fees to a successful FEHA defendant.[39] Amicus curiae ask us to require a written decision by the trial court detailing the findings which support any award of attorney fees to defendants in civil rights cases. It argues such a

---

[35]*Daramola, supra,* 872 F.Supp. at page 1419.

[36]*Daramola, supra,* 872 F.Supp. at page 1420.

[37]*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918 [57 Cal.Rptr.2d 917] (hereafter *Bond*).

[38]*Bond, supra,* 50 Cal.App.4th at page 923.

[39]*Cummings, supra,* 11 Cal.App.4th at page 1388. See also *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932] (findings are necessary in order to permit appellate review of attorney fee decisions); *Armendariz v. Foundation Health Psychological Services, Inc.* (2000) 24 Cal.4th 83, 107 [99 Cal.Rptr.2d 745, 6 P.3d 669] (written findings necessary to permit meaningful review of arbitration awards under FEHA).

requirement serves the important public purpose of ensuring fees are awarded only in the rare cases envisioned by the Supreme Court in *Christianburg*, so as to avoid discouraging litigants from bringing meritorious but not airtight claims to court. We are persuaded by this reasoning, and we therefore impose a nonwaivable requirement that trial courts make written findings reflecting the *Christiansburg/Cummings* standard in every case where they award attorney fees in favor of defendants in FEHA actions.

As noted by amicus curiae, requiring such findings will go a long way towards limiting defendants' receipt of attorney fees awards to the extreme cases envisioned by *Cummings* and *Christiansburg*. If we permit such awards to stand without written findings, we fear the chilling effect described by amicus curiae, whereby employment lawyers must warn clients with valid claims of discrimination they may be subject to an award of attorney fees against them, in an amount far in excess of their life savings. Many such clients may opt to forgo the rights and remedies provided by FEHA, rather than risk an attorney fees award which may well destroy their financial well-being. Such a result would be directly contrary to the public policies FEHA was designed to vindicate.

We are aware of the general rule providing "Where the court was not asked to and did not make findings on the substantial factual issues involved in determining whether the prevailing party was entitled to attorney fees, we must infer all findings necessary to support the judgment. [Citations.]"[40] However, given the important public policy issues served by FEHA[41] are necessarily implicated in a trial court's decision to make an attorney fees award in an antidiscrimination case, we are convinced such findings are required in order to ensure those public policy issues are not thwarted. Therefore, where the required findings are not made by the trial court, the matter must be reversed and remanded for findings, unless the appellate court determines no such findings reasonably could be made from the record.[42]

---

[40]*Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1405-1406 [245 Cal.Rptr. 606] (while prevailing plaintiff is normally entitled to attorney fees under antidiscrimination statutes, trial court's refusal to make such an award is affirmed where statement of decision on the issue was neither requested nor prepared).

[41]See *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 445 [94 Cal.Rptr.2d 143] ("The broad goal of the FEHA is safeguard an employee's right to seek, obtain, and hold employment without being subjected to discrimination because of sexual preference, race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age.").

[42]The trial court should also make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation. As the Ninth

*2. Despite the Lack of Findings, We Reverse the Award of Attorney Fees as an Abuse of Discretion.*

In the present case, even if we infer findings to support the award of attorney fees, our review of the record reveals no substantial evidence to support a finding Rosenman's action was frivolous, unreasonable, or groundless. To the contrary, as in *Cummings,* a review of the record reveals "considerable proof appellant's claim of . . . discrimination was neither frivolous, unreasonable, or groundless."[43] Accordingly, as we did in *Cummings,* we find the trial court abused its discretion in awarding attorney fees to the defendants, and we reverse the award.

In *Cummings,* we reviewed the federal discrimination cases in which fee awards to prevailing defendants were found to be appropriate.[44] We noted "Patterns developed in these cases indicate that either the plaintiff's conduct was egregious or that his or her case was patently baseless for objective reasons."[45] In reversing the fee award in *Cummings,* we noted "there is no parallel to draw between those cases and the case at bar." Similarly, in this case we find no parallel between the present case and the egregious and/or baseless plaintiffs' claims in the cases discussed in *Cummings.*

Rosenman's cause of action was not "obviously contrary to undisputed facts or well established legal principles specifically precluding recovery for the type of injury alleged,"[46] as in cases such as *Patton v. County of Kings.*[47] To the contrary, there is no doubt she suffered pregnancy-related difficulties while working at the Firm, and well-established legal principles supported her claim of discrimination based on pregnancy, and failure reasonably to accommodate her pregnancy.[48]

Rosenman also did not "continuously seek to avoid adverse legal rulings by intentionally submitting renewed motions which disguised the subject

---

Circuit Court of Appeals held in *Patton v. County of Kings* (9th Cir. 1988) 857 F.2d 1379, 1382, the trial court "should consider the financial resources of the plaintiff in determining the amount of attorney's fees to award to a prevailing defendant." We wholeheartedly agree with the Ninth Circuit's holding an award of attorney fees " 'should not subject the plaintiff to financial ruin.' " (*Ibid.*)

[43]*Cummings, supra,* 11 Cal.App.4th at page 1388.

[44]*Cummings, supra,* 11 Cal.App.4th at pages 1389-1390.

[45]*Cummings, supra,* 11 Cal.App.4th at pages 1389-1390.

[46]*Cummings, supra,* 11 Cal.App.4th at page 1390.

[47]*Patton v. County of Kings, supra,* 857 F.2d 1379.

[48]See, e.g., Government Code section 12945, subdivision (c)(2), (requiring reasonable accommodation for employees temporarily disabled by pregnancy); California Code of Regulations, title 2, division 4, sections 7291.5, subdivision (a)(9) and 7291.2, subdivision (g) (making it unlawful for employer to "refuse to accommodate the employee who is temporarily disabled by pregnancy," including by "severe 'morning sickness' ").

matter of previously denied motions,"[49] as in cases such as *Nat. Organization for Women v. Bank of California*.[50] To the contrary, as already noted Rosenman successfully defended the Firm's motions for summary judgment and nonsuit. "Nor is there any evidence appellant pursued litigation after discovery affirmatively disclosed the factual basis for the alleged discrimination,"[51] as was the case in *E.E.O.C. v. Jordan Graphics, Inc.*[52] To the contrary, as noted in an unpublished portion of this opinion, many of the most powerful documents used by the Firm to establish its defense were *not* produced in discovery.

Finally, while the Firm alleges Rosenman was shown to be a liar at trial, there is no suggestion of the kind of blatant perjury displayed by the plaintiffs in cases such as *Carrion*[53] and *Daramola*.[54] Indeed, when we compare the instant case with California and federal cases which have affirmed an award of attorney fees to a prevailing defendant in a discrimination action, we must conclude Rosenman's case does not rise to the level of frivolity required to support such an award.

We have located only one California case where the plaintiff in a pregnancy discrimination action suffered an award of fees on the ground her action was unreasonable, frivolous, meritless, or vexatious. In *Saret-Cook v. Gilbert, Kelly, Crowley & Jennett*, the Court of Appeal affirmed the trial court's award of attorney fees in favor of the defendants, where the trial court found " 'At no time did this action ever have a factual basis. Plaintiff simply lied about what occurred to her. She was aware of her lies during the course of this lawsuit and persisted in weaving a more and more incredible story to explain lies with more lies.' "[55] The Court of Appeal emphasized the findings of the trial court "amounted to much more than only a finding that [the plaintiff's] action lacked merit. Fairly read, it also constituted a finding that Saret-Cook's action was 'unreasonable,' was 'frivolous,' and was 'vexatious.' These findings are overwhelmingly supported by evidence in the record. It was no abuse of discretion for the trial court to reach these conclusions."[56] While the plaintiff's conduct in *Saret-Cook* was almost unbelievably extreme, it illustrates the type of record required to support a

---

[49]*Cummings, supra,* 11 Cal.App.4th at page 1390.

[50]*Nat. Organization for Women v. Bank of California* (9th Cir. 1982) 680 F.2d 1291.

[51]*Cummings, supra,* 11 Cal.App.4th at page 1390.

[52]*E.E.O.C. v. Jordan Graphics, Inc.* (W.D.N.C. 1991) 769 F.Supp. 1357.

[53]*Carrion, supra,* 535 F.2d 722.

[54]*Daramola, supra,* 872 F.Supp. at page 1420.

[55]*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett* (1999) 74 Cal.App.4th 1211, 1229 [88 Cal.Rptr.2d 732] (hereafter *Saret-Cook*).

[56]*Saret-Cook, supra,* 74 Cal.App.4th at pages 1229-1230.

finding of unreasonable, frivolous and vexatious action on the part of the appellant. The present case provides no evidence to support any similar findings.

There is no dispute that prior to her pregnancy, Rosenman had been a model attorney for the Firm, who espoused and followed high ethical standards. By contrast, the court in *Saret-Cook* noted: "In his opening statement at trial, Saret-Cook's own attorney acknowledged that Saret-Cook had significant psychological problems, and conceded that these psychological problems would often 'override her sense of honesty.' "[57] Saret-Cook engaged in bizarre deceptions, and was said to have a "fatal attraction" complex.[58] Rosenman did not deceive respondent as to her condition, and her conduct was not remotely similar to the severe harassment visited on the defendants by the plaintiff in *Saret-Cook*. There was credible evidence from multiple sources indicating Rosenman truly was temporarily disabled by her difficult pregnancy and needed accommodation. In addition to her own testimony, she presented both expert and percipient testimony to support her claim she was not given reasonable accommodation, as well as percipient testimony (by former Firm managing partner Andrew White, among others) to support her claim of economic discrimination. She survived a nonsuit motion as well as a motion for summary judgment. Most significantly, she garnered the votes of two jurors, who accepted her claims and would have awarded her damages for discrimination.

Although her case was not strong enough to succeed, Rosenman clearly had some basis to believe she might prevail at trial. Accordingly, like *Cummings* but unlike *Saret-Cook*, this was a case in which "reasonable minds may differ as to the strength of appellant's case but . . . it would be unreasonable to conclude appellant's action . . . was frivolous, unreasonable or without foundation."[59]

This case may also be distinguished from other cases involving perjury and fabricated evidence. In *Carrion*, the court found: " 'The plaintiff, Mrs. Odessa Carrion, testified at trial and her testimony was not credible and was not believable as it related to the material allegations.' "[60] Similarly, in *Daramola* the court found "Daramola fabricated evidence and lied to the court."[61] In both those cases, the plaintiffs' own testimony was the only evidence in support of their claims, and in both cases such testimony was

---

[57]*Saret-Cook, supra,* 74 Cal.App.4th at page 1225.
[58]*Saret-Cook, supra,* 74 Cal.App.4th at page 1216.
[59]*Cummings, supra,* 11 Cal.App.4th at page 1389.
[60]*Carrion, supra,* 535 F.2d 722, 728.
[61]*Daramola, supra,* 872 F.Supp. at page 1418.

shown to be demonstrably and intentionally false and given with malice and subjective bad faith. In this case, by contrast, Rosenman presented both percipient and expert testimony to support her claims, and while the jury ultimately was not convinced by her evidence, in the end Rosenman's case "appears to be a routine case in which the plaintiff merely failed to achieve success on her claim."[62]

The Firm does not dispute the fact Rosenman presented evidence in support of her claims, but contends because the evidence was contradicted by the Firm's own evidence, the trial court properly could find her claims frivolous. We reject this contention. Even where a plaintiff's witnesses ultimately are not credible, this does not automatically establish the plaintiff's claims are frivolous, unreasonable, or without foundation.[63] To the contrary, making a finding of frivolousness based on the relative credibility of the litigants' witnesses invites just the kind of "post hoc reasoning" the Supreme Court warned against in *Christiansburg*.[64] Even where the plaintiff foresees witness credibility problems, under *Christiansburg* "an 'airtight' claim is not a prerequisite to bringing suit."[65]

A relatively small number of California cases have awarded attorney fees to the prevailing defendant under the *Christiansburg* standard. A review of these cases reveals Rosenman's case is easily distinguishable from them all. For example, in *Linsley v. Twentieth Century Fox Film Corp.*, the appellant's claim was deemed meritless, and thus the plaintiff was properly required to pay the defendant's fees, because the plaintiff had signed "a release which explicitly released all such causes of action."[66]

In *Bond*,[67] both frivolity and bad faith were found.[68] In this case, by contrast, our view of the record reveals nothing to support a finding of subjective bad faith and it would frustrate the purpose of FEHA to permit the trial court to infer bad faith from the fact Rosenman was ultimately unsuccessful. Unlike in *Bond*, where the evidence clearly showed no discrimination, in this case the situation was not so clear. There was convincing evidence on both sides, and indeed two jurors voted to award Rosenman damages.

---

[62]*Cummings, supra*, 11 Cal.App.4th at page 1390.

[63]*E.E.O.C. v. Bruno's Restaurant* (9th Cir. 1993) 13 F.3d 285, 289 (hereafter *Bruno's Restaurant*).

[64]*Bruno's Restaurant, supra*, 13 F.3d at page 290, citing *Christiansburg, supra*, 434 U.S. at pages 421-422 [98 S.Ct. at pages 700-701].

[65]*Bruno's Restaurant, supra*, 13 F.3d at page 290.

[66]*Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762, 771 [89 Cal.Rptr.2d 429].

[67]*Bond, supra*, 50 Cal.App.4th 918.

[68]*Bond, supra*, 50 Cal.App.4th 918.

A number of prior cases have awarded attorney fees to the prevailing defendant where the plaintiffs did not establish prima facie cases against their opponents. In *Gonzales v. Metpath, Inc.*, the court explained: "In an employment discrimination case, the employee must first establish a prima facie [case] of wrongful discrimination. If she does so, the burden shifts to the employer to show a lawful reason for its action. Then the employee has the burden of proving the proffered justification is mere pretext."[69] The court then proceeded to find Gonzales did not even establish a prima facie case.[70] Although attorney fees were awarded to the prevailing defendant in *Gonzales*, *Gonzales* is distinguishable, since appellant clearly establish a prima facie case against respondent. For the same reason, the present case may be distinguished from *Guthrey v. State of California*, in which the court found: "there is absolutely no evidence in the record that we could find which supports a finding that Guthrey has even established a prima facie case for any of his claims. We therefore affirm the trial court's order granting defendants attorney fees."[71]

The case at bar is guided by the case of *Moss v. Associated Press*.[72] In *Moss*, the district court awarded attorney fees to the prevailing defendant in an age discrimination case from the time the plaintiff was aware of facts demonstrating the absence of discrimination, thus rendering unreasonable the plaintiff's continued pursuit of litigation.[73] Nonetheless, the court points out: "In the present case, Plaintiff presented at least a colorable claim, which he eventually failed to support with adequate evidence [¶] . . . [¶] . . . while 'reasonable minds may differ as to the strength of a particular case,' Plaintiff's action for age discrimination was not frivolous, unreasonable, or unfounded from the outset."[74] Similarly, Rosenman presented a colorable claim at the outset, as indicated by the fact she survived the Firm's motion for summary judgment. That her claim remained colorable throughout the litigation is evidenced by the fact two jurors voted in her favor. Although she did not prevail in the end, we cannot say she was unreasonable in continuing to pursue the litigation through trial.

The cases above demonstrate where the plaintiff's claim is frivolous, vexatious or unreasonable, it is appropriate to award attorney fees to the prevailing defendant. However, where the plaintiff presents a colorable

---

[69]*Gonzales v. Metpath, Inc.* (1989) 214 Cal.App.3d 422, 426 [262 Cal.Rptr. 654] (hereafter *Gonzales*).

[70]*Gonzales, supra*, 214 Cal.App.3d at page 426

[71]*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1111 [75 Cal.Rptr.2d 27].

[72]*Moss v. Associated Press* (C.D.Cal. 1996) 956 F.Supp. 891 (hereafter *Moss*).

[73]*Moss, supra*, 956 F.Supp. at page 895.

[74]*Moss, supra*, 956 F.Supp. at page 894.

claim, and particularly where the adverse jury verdict is less than unanimous, such an award is inappropriate in light of the very strong public antidiscrimination policy embodied in FEHA. Any other standard would have the disastrous effect of closing the courtroom door to plaintiffs who have meritorious claims but who dare not risk the financial ruin caused by an award of attorney fees if they ultimately do not succeed.

Applying this standard to the case before us, we hold the trial court abused its discretion in awarding attorney fees to the Firm. Accordingly, we reverse the trial court's judgment with respect to the award of attorney fees.

## DISPOSITION

The judgment of the trial court is modified to strike the award of attorney fees in favor of respondents. In all other respects, the judgment is affirmed. Respondents' request for attorney fees on appeal is denied. The parties shall bear their own costs on appeal.

Woods, J., and Boland, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.