[No. B189263. Second Dist., Div. Eight. Dec. 11, 2008.]

LAURA YOUNG, Plaintiff and Appellant, v.
EXXON MOBIL CORPORATION et al., Defendants and Appellants.

[CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion section.

COUNSEL

Danz & Gerber, Karl Gerber and Ann Guleser for Plaintiff and Appellant.

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Alston & Bird, Martha S. Doty and Sayaka Karitani for Defendants and Appellants.

OPINION

**COOPER, P. J.—**

## SUMMARY

An employee who was terminated after closing down a 24-hour service station for several hours, in violation of company policy, sued her employer and her supervisor, alleging claims of harassment on the basis of mental disability, retaliation, and wrongful termination, among others. The employer and supervisor sought and obtained summary judgment, and the supervisor then sought attorney fees. The court found the claims against the supervisor were frivolous and brought in bad faith, but awarded nominal attorney fees of $1 because the supervisor's fees were paid by the employer. The employee appealed from the grant of summary judgment, and the employer and supervisor cross-appealed from the award of attorney fees. We find no merit in either appeal and affirm the judgment, with a modification in the amount of costs.

## FACTUAL AND PROCEDURAL BACKGROUND

Laura Young, a student at Antelope Valley College, worked as a sales associate at an ExxonMobil service station in Lancaster on a part-time basis from April 2004 until she was fired on September 16, 2004. The station was open 24 hours a day. On September 15, 2004, Young worked a shift, alone, from 9:00 p.m. until midnight. The person scheduled to relieve her at midnight did not arrive. Young called Wanda Najera, the assistant station manager, "some time after midnight," yelling and very angry, saying she had to leave because she had to study, and that she was shutting down the station. Najera told her she couldn't do that, and that she (Young) should wait for Najera to come to the station. At 12:25 a.m., Young shut down all the gas pumps and never turned them back on, effectively closing the station (a "posted offense" which she knew could result in a suspension or discharge without prior notice). At 1:12 a.m., she logged off her cash register, and the station was then completely shut down. Young called Angela Lopez, the station manager, about 1:30 a.m., yelling and, according to Lopez, "out of control." Lopez told Young she would get someone there as soon as she could, and called Najera. Young also called Najera a second time, again yelling at Najera, and Najera told her she would be there as soon as possible. When Najera got to the station around 3:00 a.m., the station was completely shut down; Najera restarted the pumps and started operating the station.

The next morning, Lopez called Karen Johnson, a territory manager for Exxon Mobil Corporation (Exxon). Johnson went to the station on September 17 and met with Lopez about the incident. Johnson also reviewed Young's personnel file, which reflected a number of verbal and written warnings to Young concerning absences, problems with customers, and incidents of insubordination.[1] Lopez had prepared forms for Young's termination. Johnson

---

[1] Young's personnel filed showed a warning on May 6, 2004, for not appearing for work the previous day and not calling, and a warning on June 23, 2004, for "coming late almost every day." The file shows a warning on July 3, 2004, when she failed to appear for work the previous day without calling, and then "gave [Lopez] an attitude in front of another cashier . . . ." A warning on August 1, 2004, stated Young "smashed another sales associate," should control her temper, and that her "attitude towards employees and customers is getting out of [hand]." Another warning on the same date stated it was the second warning for Young's temper; that she needed to control her attitude; and that "next time she could be subject to suspension or possible termination without any notice." This incident involved a customer who asked for assistance with a broken cappuccino machine and was "very irritated" when Young informed him "that money was more important" (apparently referring to customers in line to pay for purchases). A warning on September 11, 2004, involved a customer complaint that Young was unwilling to help the customer when she put money in the carwash and received no wash; the customer said Young was "rude and very disrespectful," and told Lopez she had "never experience[d] such treatment from a cashier . . . ." A warning dated September 13, 2004, stated that Young yelled at the assistant manager (Najera), rudely and in front of another sales associate.

did not have authority to terminate employees; she contacted Exxon's human resources department in Houston and described the circumstances. The department concluded that termination was proper on grounds of insubordination and neglect of duty, based on Young's conduct during the early morning hours of September 16th, and provided an "endorse code" demonstrating that Young's termination was endorsed by the department. Johnson thereupon signed the separation form terminating Young's employment.

A few months later, Young filed a charge with the California Department of Fair Employment and Housing, alleging she was fired, harassed, and retaliated against by Lopez and other Exxon employees based on a mental disability. She requested and received a right-to-sue notice, and on February 9, 2005, filed a complaint against Exxon and Lopez. The complaint alleged causes of action against Exxon and Lopez for disability discrimination and harassment in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) and for intentional infliction of emotional distress, as well as causes of action against Exxon for wrongful termination in violation of public policy and violation of Labor Code section 1102.5, subdivision (c).[2] The substance of Young's complaint was as follows.

As a result of a tumor removed from her brain when she was a child, Young suffers from a mental disability: visual and auditory processing deficiencies,[3] manic depression and obsessive compulsive disorder. Exxon was not aware of Young's disability when she was hired in April 2004, but on July 3, 2004, Young was given a warning for showing disrespect to Lopez when Lopez reprimanded her for failing to appear for work without calling. Young then advised Lopez of her disability, telling Lopez that she needed to take medication "to avoid becoming manic and to control compulsive behaviors associated with [her] mental and physical disabilities associated with her childhood brain surgery."[4]

---

[2] Labor Code section 1102.5, subdivision (c), provides that an employer "may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

[3] According to Young, she has a "learning disability" with "no name," which she described this way: "I understand things; I comprehend things perfectly. But the speed at which my eyes and ears observe what is to be processed by the brain, the brain process itself is a slower process, not much slower. But when, over a period of time, just, just like when you time something, the lengthier the project or activity, the more noticeable the slowness might be noticed, even though it's really not that slow, but perfectly comprehendable [sic]." (Young also testified she worked as a chemistry tutor at school during the time she was employed by Exxon.)

[4] The record of this July 3, 2004 warning contains the notation that Young told Lopez that she "didn't mean it," has a brain problem and needs to take medication to control her attitude, and reacts badly when she misses her medication.

Young's complaint alleged that shortly after Lopez learned of Young's disabilities, Young's coworkers "engaged in a continuous, severe and pervasive campaign of harassing" Young. This consisted of ignoring Young; physically obstructing her from moving around in the station's work area; telling customers, vendors and suppliers that they worked with a "psycho-retard"; and showing up late to work so that Young would be required to work longer hours. Young reported her coworkers' behavior to Lopez and asked Lopez to instruct them to stop the harassing behavior. Instead of doing so, Lopez retaliated against Young by telling her "this type of stuff just happens"; cutting Young's hours; refusing to schedule around Young's school schedule; refusing to allow Young to train new employees assigned to the graveyard shift; telling other employees that she (Lopez) did not know why Young was attending college because Young was retarded; and telling another ExxonMobil manager that she (Lopez) was working with a "retard." On September 7, 2004, after Young "made a number of verbal complaints" to Lopez, Young drafted a handwritten letter about her complaints and gave it to Lopez along with printouts from Web sites discussing the laws on disability discrimination. The "ultimate act of retaliation" occurred when Lopez told Young her employment was terminated. Young sought general, special and punitive damages, as well as attorney fees.

Exxon and Lopez moved for summary judgment or, in the alternative, summary adjudication of each cause of action and of Young's claim for punitive damages. They asserted there was no evidentiary support for Young's claims; even if Young could establish a prima facie case of disability discrimination, Exxon had legitimate, nondiscriminatory reasons for terminating Young, and Young could not establish those reasons were pretextual. As for Young's harassment claim, Exxon contended most of her allegations lacked evidentiary support, and her coworkers' conduct was not severe or pervasive enough to constitute disability harassment (and, as to her claim against Lopez, Young admitted in her deposition that Lopez herself did not harass her). Finally, Exxon contended the punitive damages claim failed as a matter of law because the alleged wrongful acts were not committed by officers or managing agents of Exxon.

The trial court granted the motion for summary judgment, finding Exxon showed legitimate, nondiscriminatory and nonretaliatory reasons for terminating Young's employment, and Young presented no facts showing Exxon's stated reasons were pretextual.[5]

---

[5] The trial court stated in part: "[Young] has demonstrated that sometime between late June and August of 2004, [Young] told Ms. Lopez that she had a brain or mental condition that required her to be on medication. On August 1, 2004, the day after an incident involving pushing, shoving and hitting between [Young] and a co-worker, Amber, [Young] complained to Ms. Lopez that Amber had called her a 'psycho retard.' On September 7, 2004, [Young]

Lopez then filed a motion for attorney fees under Government Code section 12965, contending that Exxon, on behalf of Lopez, incurred substantial attorney fees defending Young's "unreasonable, frivolous, and meritless claims against Lopez individually." Lopez sought $18,750 in attorney fees, approximately one-quarter of the total fees incurred in the action. (Exxon's counsel stated this was a fair and reasonable apportionment, as the harassment wrong targeting Lopez "made up approximately 1/4 of the case . . . .")

The trial court found that Young's claims against Lopez were "unreasonable, frivolous, meritless and vexatious," "without foundation" and "brought in subjective bad faith." However, while the fees claimed to be attributable to Lopez's defense were reasonable in amount, Exxon paid for the defense. The court observed that an award to Lopez "would actually be an award to Exxon, which does not claim [Young's] claims against it were frivolous." The trial court concluded this "does not seem right," and awarded nominal attorney fees of $1.

On April 4, 2006, judgment was entered in favor of Exxon and Lopez in the amount of $25,999.93 ($1 in attorney fees and $25,998.93 in costs). (Exxon admits the amount of costs shown in the judgment was erroneous, and the judgment should have reflected a total amount of $7,249.93 ($1 in attorney fees and $7,248.93 in costs).) Young appealed, and Exxon and Lopez cross-appealed the attorney fee award of $1.

## DISCUSSION

### I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

complained to Ms. Lopez that her co-workers harassed her by calling her 'psycho retard,' physically obstructing her in her work area, and/or ignoring her. [Young's] evidence does not demonstrate 'weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action.' [Citation.] Nor does [Young] offer any evidence that [Exxon] acted with discriminatory animus, or that there was a causal connection between her complaint on September 7 and her termination on September 16."

*See footnote, *ante*, page 1467.

## II.

Exxon and Lopez cross-appealed from the order and judgment awarding attorney fees of only $1 to Lopez. They assert that because the trial court found Young's claims against Lopez individually were "unreasonable, frivolous, meritless and vexatious," and the fees "claimed to be attributable to the defense of Ms. Lopez [were] reasonable in amount," the trial court abused its discretion in nonetheless refusing to award the $18,750 requested to Lopez. We find no abuse of discretion by the trial court.

We review the principles governing attorney fee awards in FEHA actions, and then turn to the trial court's order in this case.

■ In actions under the FEHA, the court, in its discretion, may award reasonable attorney fees to the prevailing party. (Gov. Code, § 12965, subd. (b).) California courts have followed federal law, and hold that, in exercising its discretion, a trial court should ordinarily award attorney fees to a prevailing plaintiff, unless special circumstances would render an award of fees unjust. A prevailing defendant, however, should be awarded fees under the FEHA only "in the rare case in which the plaintiff's action was frivolous, unreasonable, or without foundation." (*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 864 [110 Cal.Rptr.2d 903], capitalization & italics omitted (*Rosenman*).) *Rosenman* cites the high court's observation that the strong equitable considerations supporting an attorney fee award to a prevailing plaintiff—including that fees are being awarded against a violator of federal law, and that the federal policy being vindicated by the plaintiff is of the highest priority—are not present in the case of a prevailing defendant. (*Id.* at p. 865, citing *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 418–419 [54 L.Ed.2d 648, 98 S.Ct. 694] (*Christiansburg*).) *Rosenman* imposed "a nonwaivable requirement that trial courts make written findings" reflecting the criteria supporting an award "in every case where they award attorney fees in favor of defendants in FEHA actions." (*Rosenman, supra*, 91 Cal.App.4th at p. 868.) *Rosenman* added that the trial court "should also make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation." (*Id.* at p. 868, fn. 42.)

■ Here, we have the unusual case in which a FEHA action is found to be frivolous as to one defendant but not the other, the latter of whom incurred, was liable for, and paid all the fees. Exxon says the issue to be

decided is whether an individual defendant in a FEHA suit may obtain attorney fees as the prevailing party, even when the employer has defended the individual and the individual has not personally incurred or paid any attorney fees. Exxon points out that, in other statutory and contractual contexts, there are many circumstances in which courts have found that a prevailing party need not actually incur or pay attorney fees in order to be entitled to an award. We do not quarrel with that principle, but that is not the pertinent question in this case. The question is whether the trial court abused its discretion in refusing to award fees to a defendant who did not incur or pay them, when the fee award would redound to the benefit of another defendant which is *not* entitled to an award of fees. To this question, our answer, in this case, is "no." In other words, while a trial court should ordinarily award attorney fees to a prevailing defendant in a FEHA action when the court finds the plaintiff's action was frivolous, the court has the discretion not to do so if the actual beneficiary of the attorney fee award is a defendant to which an award could not otherwise be made.

Our conclusion is consonant with the principles described in *Rosenman* for fee awards in FEHA cases, and does not conflict in any way with the cases under other statutes that permit attorney fee awards to prevailing parties who have not paid or incurred fees.

First, *Rosenman* and its predecessor cases tell us the standard by which to measure the exercise of the trial court's discretion in awarding attorney fees to a prevailing defendant in a FEHA case: namely, only in the "rare case" in which the plaintiff's action was frivolous, unreasonable or without foundation. (*Rosenman, supra*, 91 Cal.App.4th at p. 864.) But *Rosenman* does *not* tell us that the trial court *must* award fees to a prevailing defendant on a frivolous FEHA claim, no matter what the circumstances, and we decline to read *Rosenman* and the other cases as depriving the court of its discretion once it finds the plaintiff's action was frivolous or groundless. (Cf. *Christiansburg, supra*, 434 U.S. at p. 421, italics added ["a district court may *in its discretion* award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation"].) *Rosenman* itself suggests circumstances in which the court could appropriately reduce or deny a prevailing defendant fees in a frivolous case, when it tells us that the trial court must consider the plaintiff's ability to pay attorney fees, and that an award should not subject the plaintiff to financial ruin. (*Rosenman, supra*, 91 Cal.App.4th at pp. 868–869, fn. 42.) And, just as there are circumstances in which a prevailing plaintiff, who ordinarily should recover attorney fees, may not recover them—when special circumstances make an award unjust—the same is true of a prevailing

defendant in a frivolous case. This is just such a case: where the fee award to the prevailing defendant would redound to the benefit of another defendant who is not entitled to recover fees.

Second, as Exxon points out, there are many cases in which the courts have awarded attorney fees to prevailing parties who, like Lopez, are not actually liable for or have not incurred or paid fees. But in all those cases, the attorney fee award actually benefits the prevailing party or an entity which has provided the services and would otherwise not be compensated for them. (See, e.g., *Lolley v. Campbell* (2002) 28 Cal.4th 367, 370–371 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [award under Lab. Code provisions to indigent employee represented without charge by the Labor Commissioner]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1088 [95 Cal.Rptr.2d 198, 997 P.2d 511] [award under Civ. Code, § 1717 to entity represented by in-house counsel]; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 681, 683–684 [186 Cal.Rptr. 589, 652 P.2d 437] [award under Code Civ. Proc., § 1021.5 to plaintiffs who incurred no personal liability for services of attorneys employed by publicly funded agencies].)[16] In this case, by contrast, an attorney fee award to Lopez, who did not incur or pay fees, would benefit only Exxon, which, under the statute and case law, was not entitled to fees on its own account.

Third, there was no evidence that Exxon incurred fees on Lopez's behalf that it would not have incurred had Lopez not been named as a defendant. While the trial court found the amount of fees "claimed to be attributable to the defense of Ms. Lopez"—one quarter of the total—was "reasonable in amount," it appears from the supporting documentation that those fees, for the most part, would have been incurred by Exxon whether or not Lopez (who was in any event a key actor in Young's lawsuit) was named as a defendant. Counsel's summary of 10 "key activities undertaken on Angela Lopez's behalf" in defending Young's claims contains only one item that is

---

[16] (See also *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1192 [101 Cal.Rptr.2d 532] [award under Civ. Code, § 1717 to defendants whose fees were actually paid by a third party; defendants were contractually liable for payment if third party had failed to pay]; *Beverly Hills Properties v. Marcolino* (1990) 221 Cal.App.3d Supp. 7, 9, 11 [270 Cal.Rptr. 605] [award under Civ. Code, § 1717 to defendant represented by legal services group; § 1717 provides reciprocal remedy for a prevailing party who has not actually incurred legal fees, but whose attorneys have incurred costs and expenses in defending the prevailing party]; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410 [235 Cal.Rptr. 165] [award under Civ. Code, § 1717 to prevailing defendant who did not ultimately incur attorney fees because his insurers provided his defense]; *Trout v. Carleson* (1974) 37 Cal.App.3d 337, 343 [112 Cal.Rptr. 282] [award under Welf. & Inst. Code to plaintiff whose attorney worked for agency providing free legal services].)

even arguably particular to Lopez as a defendant: "Research and consideration regarding whether Lopez was a proper individual defendant or a sham defendant and whether the case might be removed to federal court."[17] Exxon neither identified nor estimated fees that were solely attributable to Lopez's presence in the case as a defendant, and it appears that any such fees were, at most, de minimis.

Fourth, *Rosenman* instructs that trial courts should "make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation."[18] (*Rosenman, supra,* 91 Cal.App.4th at p. 868, fn. 42.) The trial court declined to award fees except (at defense counsel's request) in the nominal amount of $1, and there was no reason to make any findings on Young's ability to pay. We note, however, that a February 20, 2006 declaration from Young showed she was a student who lived with her mother; owned no real property; earned $5,000 from her employment in 2005; had a $2,000 balance on her credit card; and would have to file for bankruptcy if required to pay $18,750 in attorney fees. These circumstances lend further support to the court's observation that it was "not moved to exercise its discretion in that way," that is, when the award to Lopez would actually be an award to Exxon "[r]ather than 'leveling the playing field' in frivolous FEHA cases" such as the one against Lopez.

In short, despite its finding that Young's case against Lopez was frivolous and vexatious, the trial court had the discretion to deny attorney fees to Lopez. Because the award would benefit only Exxon, a defendant which was not otherwise entitled to an award and which did not show it incurred any significant fees on Lopez's behalf that it would not have incurred in any event, we see no abuse of discretion in the trial court's decision.

---

[17] The other nine key activities undertaken on Lopez's behalf were responding to interrogatories and requests for documents, meetings with Lopez and other witnesses, the case management conference, the hearing on summary judgment, drafting discovery, the motion for summary judgment, declarations by various witnesses, depositions, and preparation of the memorandum of costs and motion for attorney fees.

[18] As we have seen, *Rosenman* also expressly imposes a "nonwaivable requirement" that trial courts make written findings reflecting the applicable standard "in every case where they award attorney fees in favor of defendants in FEHA actions." (*Rosenman, supra,* 91 Cal.App.4th at p. 868.) The trial court here found Young's action against Lopez was without foundation and brought in subjective bad faith, but did not describe the evidentiary support for those conclusions.

## DISPOSITION

The judgment, modified to reflect costs of $7,248.93 rather than $25,998.93, is affirmed. The parties shall bear their own costs on appeal.

Rubin, J., and Flier, J., concurred.