Filed 9/18/14  Chavez v. Armory Center for the Arts CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| LINDA CHAVEZ, | B242205 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC440859) |
| v. | |
| ARMORY CENTER FOR THE ARTS, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Eisenberg & Associates, Michael B. Eisenberg, Michael Kopple, Joseph S. Socher for Plaintiff and Appellant.

Gordon & Rees, Roger M. Mansukhani, Christopher B. Cato, Matthew G. Kleiner, Criag D. Nickerson, for Defendant and Respondent.

_____

In *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 (*Chavez*), our Supreme Court unanimously held that the trial court had discretion to deny an award of attorney fees in an action under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), where the plaintiff recovered $11,500 on a single cause of action but moved for attorney fees in the amount of $870,935.50. In this unlimited jurisdiction case brought under the FEHA, plaintiff and appellant Linda Chavez recovered $3,600 in damages from defendant and respondent the Armory Center for the Arts (Amory)—an amount within the jurisdiction of the limited civil and small claims courts—and requested attorney fees in the amount of $243,916.50 for 560 hours of attorney work. We hold that the trial court did not abuse its discretion under the reasoning of *Chavez* in denying plaintiff's motion for attorney fees considering the facts of this case and the de minimus amount of damages.

## FACTS

Chavez was employed as a registrar at the Armory, a community art center offering various educational programs. Chavez's boss was Carrie Whitney. Whitney told Slade Bellum, the Armory's Director of Finance and Operations and Human Resources, that she was considering firing Chavez in spring 2009. Bellum told Whitney to explain to Chavez the deficiencies in her performance and to give her an opportunity to correct them.

Whitney met with Chavez on May 20, 2009,[1] to explain that she was dissatisfied with Chavez's performance. Chavez made notes of Whitney's stated issues and kept the paper by her desk so she could perform her job as Whitney wanted. However, Chavez's performance did not improve after the meeting.

---

[1] All dates are referenced in this opinion are in 2009, unless otherwise stated.

On Friday, June 19, Scott Ward, the Armory's executive director, stood in front of Chavez's desk and said, "Your girls are showing more than usual." Chavez was shocked and embarrassed and did not know what to say. She thought that she was dressed appropriately and had always tried to "cover up more" by wearing a sports bra and layering clothes with scarves and sweaters. Ward left the office. Armory employee Edgar Rodriguez, who also was in the office, said to Chavez something to the effect of, "Did he just say that?" or "Did I just hear that?" Rodriguez observed that Chavez was visibly upset by the comment.

Ward testified that he believed that Chavez was dressed inappropriately. She was leaning forward and he could see "a decent amount of her breasts." He admitted that he said to her, "Your girls are showing," a phrase he had learned from a television show. He intended to inform Chavez in a friendly way that she was not dressed appropriately, but acknowledges it "was not a good choice of words."

Chavez left a telephone message for Bellum concerning Ward's comment to her. Bellum spoke with Chavez the following Monday. Bellum said that Ward's comment was "not okay" and encouraged Chavez to make a complaint. Chavez declined; she was embarrassed and "didn't really want anybody to know."

On June 24, Ward again entered the front office and said to Chavez, "They're showing again" or "You're showing them again." Ward pointed at the "general direction" of her chest. Chavez was "shocked" because she had taken "extra steps to cover up." Ward admitted in his testimony that he had again referred to Chavez's breasts, but said that upon entering the front office he had been "startled to find [Chavez] even more inappropriately dressed. But not only was her top low and loose, and she was leaning forward, but the design of the top had a cut out between the breasts, revealing them even more." Ward testified that he had used "a poor choice of words" to inform Chavez that she was dressed inappropriately.

Chavez sent Bellum an email that stated, "I don't want to make it a big deal, but he had made me feel uncomfortable and worried." The email also stated, "I understand if his approach was intended to make me feel comfortable, as if a friend was giving me

3

friendly advice, but given his position as executive director, I feel he should have approached it differently, maybe with a little more sensitivity, especially since I'm very self-conscious about my girls, contrary to what others think." Bellum and Chavez met in person and Chavez told her, "Let's stop this now." Bellum said that she would deal with the situation immediately.

On June 24, Bellum told Ward that she had received a complaint about him. After Ward admitted that he had used the term "your girls" in speaking with Chavez, Bellum said, "Well, she's made a complaint and she has every right, and that's really unacceptable language." Ward responded that he had heard the term on a television show and "thought, you know, what should I call them?" Bellum said, "You shouldn't call them anything. You should not make any reference to any body parts or sexual parts or anything at work. It's completely unacceptable." Ward said, "Okay."

Bellum believed that she had "completely" addressed the "issue" with Ward. She "reprimanded him for using improper, inappropriate language, addressing a body part of a female employee in her office with no one around, thought it was completely inappropriate and that I didn't want to see any of that kind of behavior from him again. And he agreed and he, you know, I'm sure he was embarrassed. And he agreed that—he realized it was not correct. So, you know, it was pretty much taken care of."

Bellum spoke with Chavez after she met with Ward. Chavez stated that she did not want to lose her job. Bellum assured Chavez that her complaint was valid and that she had every right to file a complaint.

Ward was scheduled to leave on vacation on June 25 or June 26 and return on July 9. Bellum was scheduled to leave on vacation just before July 4 and return on July 13. Bellum spoke with Ward before he left on vacation, noting that when he returned from vacation, she would still be on vacation. Bellum "reminded" Ward to not let Chavez be terminated because Chavez had just made a complaint and Bellum did not want a retaliation claim. Ward would be in charge of human resources in Bellum's absence and Bellum was concerned that Whitney would decide, in Bellum's absence, that she was unhappy with Chavez and fire her. Bellum was not concerned that Ward would be mad

4

and would fire Chavez in retaliation in Bellum's absence because he realized he had made a mistake. Ward testified that he had no recollection of any conversation with Bellum concerning Chavez not being terminated while Bellum was on vacation.

Chavez was "very anxious and panicky" on the morning of July 8, the day before Ward was to return from vacation. She left a message for Whitney that she was not feeling well and could be reached at home. She would have gone to work if Whitney needed her. Chavez felt worse the next day, when Ward was to return from vacation. She had panic or anxiety attacks and "crippling stress." She managed to go to work, arriving about 1:00 p.m. Later, she saw Whitney and told her that she would like to speak to her when Bellum returned from vacation.

Chavez was not present when Whitney arrived at work on July 8. The summer session at the Armory had just started, and Whitney was very busy. Whitney did not receive a phone or email message from Chavez about her not coming to work that day. Whitney arrived at work on July 9 between 9:00 a.m. and 9:30 a.m. Chavez was supposed to begin work at 8:30 a.m. Whitney decided to terminate Chavez because it was clear to Whitney that Chavez did not care—Whitney had talked with Chavez often and Chavez knew that Whitney needed her and it was important that she be present.

According to Whitney, she alone made the decision to terminate Chavez and Ward had no input in the decision. Whitney entered the front office and told Chavez that they needed to meet immediately. Chavez said she thought they were going to meet when Bellum returned, but agreed to meet with Whitney. Whitney then said that she was going to call Ward to join them. Chavez "freaked out a little more" and requested that a third party be present. When Whitney denied Chavez's request, Chavez excused herself to use the restroom and tried, apparently unsuccessfully, to contact Bellum.

Chavez returned to her office, where Whitney and Ward were waiting for her. Ward said, "I'm sorry. It isn't working out. We wish you the best of luck." Chavez asked Ward several times why she was being terminated. Ward did not respond. According to Chavez, Whitney finally said, "Well, Linda, it's because of communication, alcohol, and attire." Ward said that Chavez was "at-will." No one said attendance,

5

tardiness, or failing to call were reasons for Chavez's termination. Chavez felt "very sad" and was in disbelief.

According to Whitney, Ward told Chavez that she was being laid off. Chavez appeared to be angry and repeatedly asked why she was being laid off. Ward responded that she was an at-will employee. Chavez continued to press for a reason, and Whitney "blurted out" that she was laid off for "communication" and alcohol. By "communication," Whitney meant that Chavez did not care enough about her job, after having been warned about her poor performance, to call Whitney about her absences from work. Whitney did not say anything about Chavez's attendance because she was flustered and it was not on her mind. Whitney denied that she said anything about Chavez's attire.

Armory employee Tricia Garcia testified that the day after Chavez was terminated, Ward told her that the reason Chavez was terminated was because Chavez was not a "team player." He said, "Basically, we're like a family here, and you need to be loyal, and I didn't feel that she was loyal to us." According to Garcia, Ward did not say anything about attendance or tardiness. Ward testified that he did not remember a conversation as described by Garcia about Chavez's termination.

Bellum was angry when she learned that Chavez had been terminated while Bellum was on vacation. She said to Ward, "I not only talked to you about, you know, not to retaliate. I went back the next day and asked you personally make sure she doesn't get fired, and then she got fired." According to Bellum, she asked Ward how he could let Chavez be terminated and he responded that he had not thought about the issue of Chavez's complaints about him. Ward told Bellum that everyone was at-will and Whitney could not "take it" and said that Chavez "had to go." Ward testified that he did not remember Bellum asking him why he fired Chavez while Bellum was gone after being told not to do so.

Bellum also spoke with Whitney. Whitney said that Chavez had been late and not shown up for work, among other things. Whitney's grounds for terminating Chavez seemed reasonable to Bellum. Before the meeting at which Chavez was terminated, no

6

one had told Whitney about Chavez's complaints about Ward. She learned about the complaints when Bellum returned to work. When Bellum told Whitney about Ward's comments to Chavez, Whitney said, "That's not good."

After her termination, Chavez spent 15 to 20 hours a week taking a paralegal class. She had no job interviews between July 2009 and March 2011. Chavez was unemployed until a few weeks before her November 2011 trial, when she obtained a job as a cook's assistant in a kitchen. That job did not compare to her job at the Armory, which she described as "great." After she was terminated, she began looking for work in August. She checked every day for openings on Craigslist, applied and reapplied for openings, went to job fairs and applied for every available position, and posted her resume online on "Monster." When Chavez saw "now hiring" signs when driving, she would inquire about the positions. She spoke to her sister to determine if her sister's employer was hiring. She did not keep a record of every job for which she applied. She started keeping records in July 2011, after she was asked to produce documents concerning her job search efforts. Chavez found the kitchen assistant job through a friend.

Chavez testified that her confidence had been affected "by something like this." She enjoyed her job at the Armory and loved going to work—she liked the staff and the kids and did not mind working extra to complete her work. She believed that she performed her job well.

Edward Bennett, the Armory's vocational rehabilitation expert, testified about Chavez's post termination employability, earning capacity, and mitigation efforts. According to Bennett, although the average person spends 41 minutes a day looking for a job, a reasonable person spends nine hours a day five days a week looking for a job—that is, treating a job search as a job. If Chavez had made a reasonable effort to find a job, she should have been able to find a job within three to five months or 20 to 40 weeks. He testified that Chavez's efforts to find a job were not reasonable. He based that conclusion in part on the limited documentary evidence that Chavez provided in discovery about her job search efforts. According to Bennett, Chavez's time spent pursuing a paralegal

degree demonstrated that she was "going off in a different direction" and not treating her job search as a job.

## PROCEDURAL BACKGROUND

Chavez asserted six causes of action in her first amended complaint: retaliation for complaining about sexual harassment, failure to prevent retaliation for complaining about sexual harassment, failure to pay wages, failure to pay overtime compensation, failure to provide meal and rest breaks, and failure to maintain records. The Armory filed an unsuccessful motion for summary judgment or, in the alternative, summary adjudication (summary judgment motion) as to each of Chavez's causes of action. The parties called a total of 10 witnesses at trial.

Chavez settled her wage and hour claims during trial—the last four of her causes of action—for $2,000. Prior to jury deliberations, she dismissed her claim for failure to prevent retaliation. The only claim the jury decided was Chavez's claim for retaliation for complaining about sexual harassment, which alleged that the Amory terminated her employment after she complained to human resources that Ward had sexually harassed her. (Gov. Code, § 12940, subd. (h).) Chavez sought to recover economic, non-economic, and punitive damages. She also sought to recover her attorney fees under the FEHA.

At the conclusion of the seven day trial, Chavez's attorney asked the jury to award approximately $63,000 to $84,000 in damages for up to two years of salary and benefits, and for emotional harm. The jury awarded Chavez $3,600—$1,800 for past economic loss and $1,800 for past non-economic loss. The jury found that Chavez complained that Ward sexually harassed her, that the Armory discharged Chavez, and that Chavez's complaint about Ward was a motivating reason for her discharge. The jury found that Ward did not engage in the retaliatory conduct with malice, oppression, or fraud, negating the claim for punitive damages.

8

After the trial, Chavez, as the prevailing party, moved for an award of $243,916.50 in attorney fees under Government Code section 12965, subdivision (b). The trial court denied the motion.

**Statutory Framework and Standard of Review as Explained in *Chavez***

A prevailing party in a civil action is entitled to costs, which include attorney fees where authorized by statute. (Code Civ. Proc., §§ 1032, subd. (b); 1033.5, subd. (a)(10)(B).)[2] There is an exception to the prevailing party's right to costs, including statutory attorney fees, when judgment in an unlimited civil action (involving damages in excess of $25,000) could have been rendered in a limited civil case. (*Chavez*, *supra*, 47 Cal.4th at p. 975.) In this situation, the trial court determines costs in its discretion. (§ 1033, subd. (a)); *Chavez*, *supra*, at p. 975.)

Government Code section 12965, subdivision (b), grants the trial court discretion to award attorney fees to the prevailing party in any action brought under the FEHA (Gov. Code, § 12900 et seq.). "This statute has been interpreted to mean that in a FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff unless special circumstances would render a fee award unjust. (*Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474; *Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, 331 [(*Steele*)].)" (*Chavez*, *supra*, 47 Cal.4th at p. 976.)

*Chavez* resolved a dispute among the Courts of Appeal regarding whether the trial court has discretion under section 1033, subdivision (a), to deny the prevailing plaintiff's motion for attorney fees if that party brings an action under the FEHA that is not brought as a limited civil case and recovers an amount that could have been awarded in a limited civil case. (*Chavez*, *supra*, 47 Cal.4th at p. 976.) Citing and relying upon our decision in *Steele, supra,* 59 Cal.App.4th 326, a unanimous California Supreme Court held that

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

9

attorney fees could be limited or denied entirely to a prevailing plaintiff in an action under the FEHA where the award of damages fell within the jurisdiction of a limited case. "In other words, section 1033(a) applies when a plaintiff has obtained a judgment for money damages in an amount (now $25,000 or less) that could have been recovered in a limited civil case, but the plaintiff did not bring the action as a limited civil case and thus did not take advantage of the cost- and time-saving advantages of limited civil case procedures. In this situation, even though a plaintiff who obtains a money judgment would otherwise be entitled to recover litigation costs as a matter of right, section 1033(a) gives the trial court discretion to deny, in whole or in part, the plaintiff's recovery of litigation costs." (*Chavez*, *supra*, 47 Cal.4th at pp. 982-983.)

We review the trial court's ruling denying attorney fees to Chavez under "the abuse-of-discretion standard of review. (*Steele v. Jensen Instrument Co.*, *supra*, 59 Cal.App.4th at p. 331; *Cummings v. Benco Building Services* [(1992)] 11 Cal.App.4th [1383,] 1387.)" (*Chavez*, *supra*, 47 Cal.4th at p. 989.) Under this deferential standard of review, the party appealing the trial court's decision regarding costs bears the burden of establishing a clear abuse of discretion and a miscarriage of justice. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1482.) "To meet its burden, a complaining party must therefore show that the trial court exercised its discretion in an 'arbitrary, capricious or patently absurd manner.' [Citation.]" (*Adams v. Ford Motor Co.*, *supra*, at p. 1482.)


**Analysis**


The trial court issued a detailed written ruling, analyzing Chavez's request for attorney fees under *Chavez*, *supra*, 47 Cal.4th 970. The court reviewed the facts and analysis in *Chavez* and concluded attorney fees should be denied in this case on three independent grounds: (1) Chavez's success was limited and her fee request was inflated; (2) the action could have been brought as a limited civil action; and (3) an award of attorney fees would not further the purposes of the FEHA. Chavez contends the trial

10

court abused its discretion on all three grounds. We address the first ground relied upon by the court, and hold the ruling was well within court's broad discretion.

The written ruling of the trial court eliminates any argument that there was an abuse of discretion based either on a misunderstanding of the law or a failure to exercise discretion. The court accurately set forth the holding in *Chavez*, cited language from the opinion at length, and applied the law to the circumstances in this case. The trial court made explicit findings as to plaintiff's lack of proof of damages, as reflected in the jury's verdict as well as the court's independent interpretation of the evidence. As in *Chavez*, we recognize that the trial court was "in a much better position than this court . . . to determine whether this action could fairly and effectively have been litigated as a limited civil case and also whether plaintiff's attorney should have realized, well before the action proceeded to trial, that plaintiff's injury was too slight to support a damage recovery in excess of $25,000." (*Chavez*, *supra*, 47 Cal.4th at p. 991.)

It is correct, of course, that Chavez did recover $3,600 in damages and she therefore was entitled to seek attorney fees under the FEHA, but a nominal award of damages does not compel, as a matter of law, an award of attorney fees. "Although attorney fees need not be strictly proportionate to the damages recovered (*Riverside v. Rivera* (1986) 477 U.S. 561, 574), '[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [citation], the only reasonable fee is usually no fee at all' (*Farrar v. Hobby* (1992) 506 U.S. 103, 115)." (*Chavez*, *supra*, 47 Cal.4th at p. 989.) "Whether plaintiff was entitled to an award of attorney fees for time spent litigating the single successful claim requires consideration of another established principle governing attorney fee awards: 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137.)" (*Chavez*, *supra*, at p. 990.)

The trial court could reasonably conclude the circumstances supporting a large award of attorney fees in this case were less favorable than those in *Chavez*. The plaintiff

11

in *Chavez* recovered damages of $11,500 for a single cause of action under the FEHA, but he sought an attorney fee award of $870,935.50 based upon 1,851.43 attorney hours. (*Chavez*, *supra*, 47 Cal.4th at pp. 976, 991.) The trial court in *Chavez* denied all attorney fees, relying on our opinion in *Steele*, *supra*, 59 Cal.App.4th 326. Our Supreme Court affirmed, holding in part that "the trial court reasonably could and presumably did conclude that plaintiff's attorney fee request . . . was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim. *This fact alone was sufficient, in the trial court's discretion, to justify denying attorney fees altogether*." (*Chavez*, *supra*, at pp. 990-991 (italics added).)

The trial court here could, within the bounds of judicial discretion, find that a request for $243,916.50 in attorney fees based on 560 hours of work in a case resulting in an award of $3,600 is grossly inflated. The fees requested were approximate 67 times the amount of the meager award of damages. The damages award here was not merely less than the maximum in a limited jurisdiction case, *it was less than fifty percent of the maximum of $7,500 in a small claims action*. Contrary to Chavez's argument, there is ample support in the record for the trial court's discretionary conclusion that the case did not warrant 560 hours of attorney work and that it should have been apparent to counsel after Chavez's deposition that she possessed meager proof of mitigation of damages.

This court's decision in *Steele*, *supra*, 59 Cal.App.4th 326, provides further support for the trial court's ruling. In *Steele*, the plaintiff recovered $21,000 on a single cause of action for pregnancy discrimination. The trial court denied the plaintiff's request for an award of attorney fees. We held the trial court did not abuse its discretion in denying attorney fees in their entirety on the ground the award fell below the maximum in a limited action. *Steele* was cited with approval in *Chavez*. The $3,600 award of damages to Chavez here pales in comparison to the award in *Steele*. Even taking into account the $2,000 Chavez recovered in settlement on the wage and hour claims, the damages in this case are not merely modest—they can fairly be described as de minimus.

12

Finally, we note that Chavez has cited no authority on appeal holding that a denial of attorney fees in an action resulting in an award of damages within the jurisdiction of a limited civil court constitutes an abuse of discretion. While each case must be considered on its individual merits, and a small award of damages does not preclude an award of attorney fees as a matter of law, we are satisfied the trial court understood the applicable law and applied that law to the circumstances of this case. Considering the award of damages at the low end of the jurisdiction in a limited action, and a request for attorney fees grossly disproportionate to that award, denial of the attorney fees request is both consistent with *Chavez* and *Steele*, and not an abuse of discretion.

## DISPOSITION

The judgment and order denying attorney fees are affirmed. Costs on appeal are awarded to the Armory Center for the Arts.


KRIEGLER, J.


I concur:



TURNER, P. J.


13

MOSK, J., Dissenting

I dissent.

Chavez asserted six causes of action, settled four of them and dismissed one, leaving her claim for retaliation for complaining about sexual harassment. Chavez sought to recover economic, non-economic, and punitive damages. She also sought to recover her attorney fees under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq[1]).

The Armory filed a motion for summary judgment or, in the alternative, summary adjudication (summary judgment motion) as to each of Chavez's causes of action. Together, the Armory's motion, Chavez's opposition, the Armory's reply, and the respective supporting papers totaled well over 1,000 pages. The trial court denied the Armory's summary judgment motion in its entirety.

The Amory's trial witness list identified 12 percipient witnesses and one expert witness. Chavez's trial witness list identified some of the same witnesses and added eight additional witnesses. Thus, between them, the Armory and Chavez identified 20 witnesses on their trial witness lists. At trial, the parties called 10 witnesses.

The evidence suggested actionable conduct. Indeed, prior to trial defendants offered plaintiff $115,000 to settle the case. The evidence dealing with mitigation of damages conflicted. At the conclusion of the seven day trial, Chavez's attorney asked the jury to award Chavez approximately $63,000 to $84,000 for economic and emotional harm.

The jury found that Chavez complained that defendant Ward sexually harassed her, that the Armory discharged Chavez, and that Chavez's complaint about Ward was a motivating reason for her discharge. It awarded Chavez $3,600—$1,800 for past economic loss and $1,800 for past non-economic loss. It found that Ward did not engage

---

[1]    All statutory citations are to the Government Code unless otherwise noted.

in the retaliatory conduct with malice, oppression, or fraud and thus did not award punitive damages.

Section 12965, subdivision (b)$^2$ grants a trial court the discretion to award attorney fees to a prevailing party. Attorney fee awards in FEHA actions "make it easier for plaintiffs of limited means to pursue meritorious claims" and are intended to compensate fairly the attorney in the present case and to encourage litigation of meritorious public interest claims. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984 (*Chavez*).) Section 12965(b) "has been interpreted to mean that in a FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff unless special circumstances would render a fee award unjust. [Citations.]" (*Chavez, supra*, 47 Cal.4th at p. 976.)

"'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' [Citations.]" (*Chavez, supra*, 47 Cal.4th at p. 990.) A trial court may deny an attorney fees request altogether in connection with a single successful claim if the request is "grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend in litigating such a claim." (*Id*. at p. 991.)

Code of Civil Procedure section 1033, subdivision (a) (section 1033(a)) provides, "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." "In other words, section 1033(a) applies when a plaintiff has obtained a judgment

2    When Chavez brought her motion for attorney fees, section 12965(b) provided, in relevant part, "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity." Section 12965(b) now provides, in relevant part, "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees."

for money damages in an amount (now $25,000 or less) that could have been recovered in a limited civil case, but the plaintiff did not bring the action as a limited civil case and thus did not take advantage of the cost- and time-saving advantages of limited civil case procedures. In this situation, even though a plaintiff who obtains a money judgment would otherwise be entitled to recover litigation costs as a matter of right, section 1033(a) gives the trial court discretion to deny, in whole or in part, the plaintiff's recovery of litigation costs." (*Chavez, supra*, 47 Cal.4th at pp. 982-983.) In exercising its discretion under section 1033(a), a trial court should consider "the amount of damages the plaintiff reasonably and in good faith could have expected to recover." (*Chavez, supra,* 47 Cal.4th at p. 984.) In exercising its section 1033(a) discretion in a FEHA action, "the trial court must give due consideration to the policies and objectives of the FEHA in general and of its attorney fee provision in particular." (*Chavez, supra*, 47 Cal.4th at p. 976.)

In sum, the Supreme Court in *Chavez* addressed the following question: "If, as here, a party brings an action under the FEHA that is not brought as a limited civil case and recovers an amount that could have been awarded in a limited civil case, does the trial court have discretion under section 1033(a) to deny that party's motion for attorney fees?" (*Chavez, supra,* 47 Cal.4th at p. 976.) The court's answer was in the affirmative. (*Ibid.*) The court explained: "If, based on the available information, the plaintiff's attorney might reasonably have expected to be able to present substantial evidence supporting a FEHA damages award in an amount exceeding the damages limit (now $25,000) for a limited civil case, or if the plaintiff's attorney might reasonably have concluded that the action could not be fairly and effectively litigated as a limited civil case, the trial court should *not* deny attorney fees merely because, for example, the trier of fact ultimately rejected the testimony of the plaintiff's witnesses or failed to draw inferences that were reasonably supported, although not compelled, by the plaintiff's evidence. But if, to the contrary, the trial court is *firmly persuaded* that the plaintiff's attorney had no reasonable basis to anticipate a FEHA damages award in excess of the amount recoverable in a limited civil case, and *also* that the action could have been fairly

3

and effectively litigated as a limited civil case, the trial court *may* deny, in whole *or in part,* the plaintiff's claim for attorney fees and other litigation costs." (*Id.* at p. 987, italics added.)

As noted, the court in *Chavez, supra,* 47 Cal.4th 970, emphasized that a trial court determines whether a plaintiff should have brought her FEHA action as a limited civil case, it should evaluate the case in light of the information the plaintiff's attorney knew when he filed the action and as the action later developed. (*Chavez, supra*, 47 Cal.4th at p. 986.) The trial court should "avoid 'hindsight bias,' which is the recognized tendency for individuals to overestimate or exaggerate the predictability of events after they have occurred. (See *Christiansburg Garment Co. v. EEOC* [(1978)] 434 U.S. 412, 421-422 [cautioning courts, in deciding whether to award attorney fees to a prevailing defendant in an antidiscrimination action, to 'resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation']; see also *KSR Int'l Co. v. Teleflex, Inc.* (2007) 550 U.S. 398, 421 [167 L.Ed.2d 705, 127 S.Ct. 1727] [recognizing risk of hindsight bias in patent decisions].)" (*Id.* at pp. 986-987.)

If a trial court determines that a plaintiff's attorney might reasonably have expected to present evidence that would have supported a FEHA damages award that exceeded the $25,000 damages limit for a limited civil case (Code Civ. Proc., § 85, subd. (a)), or that the plaintiff's attorney might reasonably have concluded that he could not fairly and effectively litigate the plaintiff's FEHA action as a limited civil case, it should not deny attorney fees merely because the jury did not accept the testimony of the plaintiff's witnesses or did not draw inferences that the plaintiff's evidence reasonably supported but did not compel. (*Chavez, supra*, 47 Cal.4th at p. 987.) If, however, the trial court determines that plaintiff's attorney did not have a reasonable basis to expect a FEHA damages award above the $25,000 damages limit for a limited civil case and that the plaintiff's attorney could have fairly and effectively litigated the plaintiff's FEHA

4

claim as a limited civil case, then it may deny the plaintiff's claim for attorney fees in whole or in part. (*Ibid.*)

The court in *Chavez, supra,* 47 Cal.4th 970 then considered the trial court's ruling in the matter before it. The court observed that the plaintiff was seeking attorney fees incurred in that case and a series of other related cases in which it sought claims for employment discrimination, harassment, and retaliation under FEHA, civil rights violations under federal law, nuisance, trespass, inverse condemnation, invasion of privacy, and loss of consortium; yet the only claim on which he succeeded in recovering any damages was the claim for retaliation based on his prior unsuccessful FEHA claims. (*Chavez, supra,* 47 Cal.4th at p. 990.) The court also acknowledged that the trial court could have reasonably found that the fee request was grossly inflated, and that the case should have been brought as a limited civil case. (*Id.* at pp. 990-991.) Under those facts, "there was no abuse of discretion in the trial court's decision denying an attorney fee award to plaintiff." (*Id.* at p. 991.)

In denying Chavez's motion for attorney fees, the trial court found three "special circumstances" that would render an award of attorney fees under section 12965(b) unjust: Chavez's requested attorney fees were excessive in light of her limited success, Chavez recovered damages that could have been recovered in a limited civil case, and an award of attorney fees would not have promoted the policy underlying attorney fees awards in FEHA actions. Based on the facts, the trial court's findings are erroneous.


A.     Limited Success and Inflated Fees

The trial court found that Chavez's attorney fees "request in the amount of $243,916.50 for over 560 attorney hours was grossly inflated when considered in light of the single retaliation claim on which Chavez succeeded, the amount of damages awarded on the claim ($3,600), and the amount of time any attorney might reasonably expect to spend in litigating such a claim." According to the trial court, Chavez failed to provide the jury with sufficient evidence to support her claim of damages. The Armory, on the

5

other hand, presented Bennett's testimony that Chavez's mitigation efforts were minimal and that her economic damages would at most have been $14,580. The trial court found it significant that Chavez did not present testimony to rebut Bennett's testimony and did not present "any documentary evidence" to show that she made reasonable efforts to find a job after her termination. The trial court concluded that Chavez, in effect, "did not dispute the fact that she made practically no effort to mitigate her damages." The trial court found "equally sparse" Chavez's evidence of emotional distress, noting that her attorneys acknowledged that she did not seek treatment for any emotional condition.

As for the attorney fees claim itself, the trial court stated that Chavez's attorneys made no effort to separate the time spent on Chavez's retaliation claim as opposed to her wage and hour claims. The trial court found, based on the nature of the retaliation claim and the court's "experience in these matters," that a claim of 560 hours of attorney time to prosecute a single claim was "grossly excessive" and "so high [that] the Court [did] not even need to address each specific charge."

The record does not support the trial court's findings that Chavez failed to present sufficient evidence to support her claim of damages and that she did not engage in meaningful mitigation efforts. Chavez testified that she was unemployed for over two years—from her termination on July 9, 2009, to just before her November 2011 trial. She submitted substantial evidence of her efforts to find employment and mitigate her damages after her termination. She testified that she began looking for work shortly after her termination, she looked every day for open positions listed on the internet, she posted her resume online, she went to job fairs and applied for every available position, and she inquired about positions she saw advertised through "now hiring" signs that she saw when driving. Moreover, when not looking for work, Chavez spent significant time pursuing a paralegal education that would make her more employable. Chavez was not required to present documentary evidence of her efforts to find employment or to present expert witness testimony or other evidence in rebuttal to Bennett's testimony. That

6

defendants offered plaintiff $115,000 before jury selection suggests there was not a lack of evidence of mitigation.

Although not as extensive, Chavez also presented evidence of her non-economic damages. Chavez testified that her retaliatory termination affected her confidence. She enjoyed her job at the Armory and loved going to work. Her termination left her "very sad" and in disbelief.

Chavez's claim for 560 hours of attorney time was not, on its face, grossly excessive as the trial court found, even assuming all 560 hours were spent exclusively on the retaliation claim.[3] There were multiple percipient witnesses whose depositions were taken (and used extensively at trial), the Armory filed a summary judgment motion that Chavez successfully opposed, and the trial lasted seven days and included 10 witnesses and substantial documentary evidence.

Accordingly, the trial court erred in denying Chavez's attorney fees motion on the ground that an award of attorney fees would have been unjust because Chavez's requested attorney fees were excessive in light of her limited success. (See *Chavez*, *supra*, 47 Cal.4th at pp. 990-991.)

B.     Limited Civil Case

The trial court found that Chavez's attorneys "knew or should have known before trial that [Chavez]'s remaining claim for retaliation should have been pursued in a limited action." The trial court based that finding on its determination that Chavez's attorney "had no reasonable basis to anticipate a FEHA damages award in excess of the amount recoverable in a limited civil case in light of the seriously deficient evidence on damages and mitigation."

---

[3]     As noted, Chavez proceeded to trial on six causes of action. During trial, Chavez settled her four wage and hour causes of action during trial and dismissed her cause of action for failing to prevent retaliation for complaining about sexual harassment.

7

As explained above, in exercising its discretion under section 1033(a), a trial court should consider "the amount of damages the plaintiff reasonably and in good faith could have expected to recover." (*Chavez, supra*, 47 Cal.4th at p. 984.) When a plaintiff's attorney might reasonably have expected to present evidence that would have supported a FEHA damages award in excess of the $25,000 damages limit for a limited civil case, a trial court should not deny attorney fees merely because the jury did find the plaintiff's evidence persuasive. (*Id.* at p. 987.)

As set forth above, Chavez testified that she was unemployed for two years after the Armory terminated her employment in retaliation for complaining about Ward's sexual harassment. She also provided substantial evidence of her efforts to find other employment and mitigate her damages. If the jury had awarded only Chavez's requested economic damages—one and a half to two years of salary and benefits or $31,680 to $42,240—she would have recovered an amount in excess of the $25,000 recoverable in a limited civil case. If the jury had awarded Chavez economic damages consistent with the Armory's expert witness's testimony—Bennett testified that Chavez's economic damages were at most $14,580—and awarded a like amount for non-economic damages—as it had in awarding $1,800 in past economic and $1,800 in past non-economic damages— Chavez also would have recovered an amount in excess of the $25,000 recoverable in a limited civil case. Moreover, the jury's finding that Chavez's complaint that the Armory's executive director was sexually harassing her was a motivating factor in Chavez's termination exposed the Armory to an award of punitive damages. In light of the evidence in support of Chavez's economic damages and mitigation efforts and the potential for non-economic and punitive damages, a reasonable attorney would have expected to recover for Chavez's retaliation action an amount in excess of the $25,000 damages limit for limited civil cases. (*Chavez, supra*, 47 Cal.4th at pp. 984, 987.) Prior to jury selection defendants offered Chavez $115,000 to settle the case. Accordingly, the trial court erred in denying Chavez's motion for attorney fees on the ground that an

8

attorney fees award would have been unjust because Chavez recovered damages that could have been recovered in a limited civil case.[4]

### C. Public Policy

The trial court quoted *Chavez, supra*, 47 Cal.4th at page 984 for the proposition that "In FEHA actions, attorney fee awards, which make it easier for plaintiffs of limited means to pursue meritorious claims [citation] 'are intended to provide "fair compensation to the attorneys involved in the litigation at hand and encourage [ ] litigation of claims that in the public interest merit litigation."' [Citation.]" It then found that an award of attorney fees would not promote the public policy of encouraging the assertion of meritorious claims because Chavez's retaliation action should have been brought as a limited civil case and the attorney fees request was grossly inflated in light of the single retaliation claim on which Chavez succeeded. The trial court also found that Chavez could not claim that her nominal success on her retaliation claim had a broad public impact or benefited anyone other than herself. Thus, the trial court concluded, an award of attorney fees would result in a windfall to Chavez and her attorneys.

As explained above, Chavez's retaliation action reasonably was not filed as a limited civil case and Chavez's attorney fees request was not excessive in light of her limited success. Thus, an award of attorney fees would have supported the public policy of making it easier for a plaintiff of limited means to pursue a meritorious claim by providing fair compensation to the plaintiff's attorney. Accordingly, the trial court erred in denying Chavez's motion for attorney fees on the ground that an attorney fees award

---

[4] In *Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, two defendants obtained nonsuits and the amount recovered was less than a Code of Civil Procedure section 998 offer. The court noted that "'[a] prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."'" (*Id.* at p. 331.) The court suggested that if the award was an amount within limited jurisdiction, the trial court had discretion to deny fees. The court in *Chavez, supra,* 47 Cal.4th at page 984, in effect, limited the discretion when a plaintiff reasonably could have expected damages exceeding the limited jurisdiction amount.

9

would have been unjust because it would not have promoted the policy underlying attorney fees awards in FEHA actions.

I would reverse the trial court's denial of Chavez's motion for attorney fees, and remand the matter to the trial court to determine the amount of attorney fees to which Chavez is entitled.


MOSK, J.