Filed 1/22/15  Stenehjem v. Akon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JEROME STENEHJEM, | H039738 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 111CV209402) |
| v. | |
| AKON, INCORPORATED, et al. | |
| Defendants and Respondents. | |

In September 2011, Jerome Stenehjem sued his former employer (Akon, Incorporated) and its president and chief executive officer, Surya Sareen.  (Akon and Sareen are collectively referred to as Defendants.)  One of Stenehjem's claims was a cause of action against Akon for discrimination under the Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA).[1]  After judgment was entered in favor of Defendants on all claims, Akon filed a motion under section 12965, subdivision (b) (§ 12965(b)) seeking attorney fees for its successful defense of the FEHA discrimination claim.  The court granted the motion and awarded Akon attorney fees of $10,000.  This amount was less than one-fifth of the amount of fees Akon had requested.

---

[1] Further statutory references are to the Government Code unless otherwise stated.

On appeal, Stenehjem challenges the attorney fee award, asserting that the court erred in finding that his FEHA discrimination claim was frivolous and unreasonable under section 12965(b). We conclude that because Stenehjem has failed to produce a complete record of the trial proceedings, he has failed to meet his burden of demonstrating error. But even disregarding this procedural failure, we find, based upon the limited record provided, that the court did not abuse its discretion in awarding attorney fees to Akon. We will therefore affirm the attorney fee order.[2]

PROCEDURAL HISTORY

I.      Complaint

Stenehjem filed suit against Defendants on September 19, 2011. Although the initial complaint did not include a discrimination claim under the FEHA, Stenehjem's first amended complaint, filed October 28, 2011, did include such a claim.

The operative pleading is the unverified Third Amended Complaint (Complaint) filed on April 12, 2012. Stenehjem alleged that he commenced his employment with Akon in November 2006, and he was terminated without good cause on January 20, 2011. Stenehjem alleged six causes of action: (1) defamation; (2) unlawful prevention of employment by misrepresentation (Lab. Code, § 1050); (3) employment discrimination under the FEHA; (4) wrongful termination in violation of public policy; (5) intentional infliction of emotional distress; and (6) breach of the implied covenant of good faith and fair dealing.

Stenehjem alleged in the third cause of action that Akon had a policy against employing people born in the United States, and that Stenehjem's "sex, gender, race, national origin, ancestry, and color were substantial factors in [Akon's] decision to

---

[2] In a separate appeal heard and decided with this appeal (case no. H039329), Stenehjem challenged the entry of judgment entered against him. In a separate opinion filed this date, we affirm the judgment.

2

terminate his employment." He alleged that he "was terminated for alleged conduct which he did not commit, and which was in fact committed by employees of other sex/gender and race/national origin after being falsely accused of assault which was disproven by videotape and acknowledged by Defendants to [have been] a false rumor." Stenehjem alleged further that the reason given for his termination was pretextual; he was replaced by someone of a different gender, national origin, or race; and coworkers of a different gender, national origin, or race were not disciplined for the same conduct of which Akon accused Stenehjem.[3]

## II.    Trial and Judgment

The case proceeded to trial on November 28, 2012, before Superior Court Judge Mary Arand and was submitted to the jury on the first cause of action for defamation and the third cause of action for discrimination under the FEHA.[4] On December 7, 2012, a jury found in favor of Defendants and against Stenehjem on both claims. Judgment was entered on December 17, 2012.

---

[3] Because of a related case before this court, we are aware that there was a cross-complaint filed by Sareen against Stenehjem alleging a claim for civil extortion. Sareen appealed from an order granting Stenehjem's special motion to strike that cross-complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute). We held the court erred and reversed that order. (See *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405.) Pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), we take judicial notice of this prior opinion because it "help[s] complete the context of this case." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2.)

[4] Before trial, the court granted Sareen's motion for summary adjudication of the second and fifth causes of action for unlawful prevention of employment by misrepresentation (Lab. Code, § 1050) and intentional infliction of emotional distress, respectively. Later, Judge Arand dismissed those causes of action against Akon on the same basis as the court's prior summary adjudication order. Judge Arand also granted Defendants' motion for nonsuit on the fourth cause of action for wrongful termination in violation of public policy and the sixth cause of action for breach of the implied covenant of good faith and fair dealing.

III.    *Motion for Attorney Fees*

On January 14, 2013, Akon filed a motion for attorney fees under section 12965(b).  Stenehjem opposed the motion.

In its motion, Akon asserted that, after deducting certain attorney fees unrelated to the FEHA claim, it incurred attorney fees of $71,760 to defend both the FEHA claim and the defamation claim at trial.  Akon asserted further that "[t]he discrimination claim was, in reality, the *entire* exposure in the trial.  Without the discrimination claim, there would have been no lawsuit, and there certainly would have been no jury trial."  (Original italics.)  It therefore argued that "the bulk" of the fees attributable to the trial ($71,760) should be allocated to the defense of the discrimination claim, and that, at a minimum, Akon should be awarded two-thirds of this amount, or $47,840.  In addition, Akon requested $4,810—later in its reply increased to $6,760—in attorney fees incurred in preparing the fee motion.

The court heard extensive argument on the motion on March 15, 2013.  After providing a detailed recitation of her views concerning the discrimination claim, Judge Arand found that "Plaintiff's claims of discrimination based on gender were frivolous and unreasonable."  And after giving consideration to Stenehjem's ability to pay, the court granted Akon's motion and awarded $10,000 in attorney fees.  On April 15, 2013, the court entered a formal written order granting the motion.  In it, the court, citing *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 (*Christiansburg*), reiterated its conclusion that the discrimination claim was frivolous and unreasonable, and it incorporated by reference its reasoning as recited during the hearing.

DISCUSSION

I.    *The Order Granting Attorney Fees*

A.    Applicable Law and Standard of Review

Section 12965(b) permits an award of attorney fees and costs to the prevailing party in an action brought under the FEHA.  The statute provides in relevant part:  "In

4

civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." (§12965(b).) "The language, purpose and intent of California and federal antidiscrimination acts are virtually identical. Thus, in interpreting FEHA, California courts have adopted the methods and principles developed by federal courts in employment discrimination claims arising under title VII of the federal Civil Rights Act, 42 United States Code section 2000e et seq." (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386-1387 (*Cummings*).)

In the context of attorney fee awards in cases involving title VII discrimination claims, the United States Supreme Court has enunciated dual standards for the trial court to employ, depending on the identity of the prevailing party. If the plaintiff prevails, he or she " 'should ordinarily recover an attorney's fee unless special circumstances would render an award unjust.' [Citation.]" (*Christiansburg*, *supra*, 434 U.S. at pp. 416-417.) A prevailing defendant, however, should only be awarded attorney fees "upon a finding [by the district court] that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." (*Id.* at p. 421.)

In light of California courts' adoption of principles developed by federal courts in title VII discrimination cases to state FEHA discrimination claims (see *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984 (*Chavez*)), the *Christiansburg* standard has been applied to defendants who seek attorney fees after successfully defending a FEHA claim. (See *Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474; *Cummings*, *supra*, 11 Cal.App.4th at pp.1386-1388; see also *Chavez*, at p. 985 [acknowledging that California courts have adopted rule enunciated in *Christiansburg*].) In *Cummings*, *supra*, 11 Cal.App.4th at page 1387, the court held (quoting *Christiansburg*, *supra*, 434 U.S. at p. 421) that " 'such awards should be permitted "not routinely, not simply because [the defendant] succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." ' " (See also *Mangano v. Verity, Inc.* (2008)

5

167 Cal.App.4th 944, 951 [attorney fees awardable to one who successfully defends FEHA discrimination claim "only if the action is deemed unreasonable, frivolous, or meritless"].)  "A meritless case in this context is one that is groundless or without a legal or factual basis."  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 420 (*Leek*); see also *Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 831 (*Jersey*) [mere lack of merit of a claim for discrimination under the FEHA or fact that plaintiff lost insufficient to award attorney fees to defendant].)

A plaintiff's ability to pay fees must be given consideration by the trial court before awarding attorney fees to a defendant under section 12965(b).  (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 70 (*Robert*).)  And California appellate courts have generally adhered to a requirement that the trial court make express written findings showing its application of the proper legal standards if it awards the defendant attorney fees under section 12965(b).  (See *Leek*, *supra*, 194 Cal.App.4th at p. 420; *Jersey*, *supra*, 97 Cal.App.4th at p. 831; *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 868 (*Rosenman*).)

An attorney fee award under section 12965(b) is reviewed for abuse of discretion. (*Chavez*, *supra*, 47 Cal.4th at p. 989; *Rosenman*, *supra*, 91 Cal.App.4th at p. 865; *Cummings*, *supra*, 11 Cal.App.4th at pp. 1386-1387.)  In assessing an attorney fee award, " '[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.'  [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)  And the amount of an attorney fee award is likewise vested with the discretion of the trial court.  " 'The "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' "—meaning that it abused its discretion.  [Citations.]  (*PLCM Group, Inc.*

6

*v. Drexler* (2000) 22 Cal.4th 1084, 1095, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)

### B. No Abuse of Discretion in Attorney Fee Award

Stenehjem contends the court erred in granting Akon's motion for attorney fees because: (1) the trial court's denial of Akon's motion for nonsuit showed the FEHA discrimination claim was not frivolous; (2) it was a close case, as evidenced by a juror declaration describing the deliberations and votes of the jury, which demonstrated the claim had potential merit; (3) he (Stenehjem) presented a colorable claim of discrimination by, among other things, showing that Akon's firing of him was pretextual and was based upon alleged grounds that were ultimately disproven; and (4) he presented direct evidence of discrimination, principally through the deposition testimony of Sareen.

After discussing Stenehjem's failure to present an adequate record on appeal, we will address each of his arguments below.

### 1. Inadequacy of Appellate Record

A fundamental appellate principle is that "[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) The party challenging a ruling by the trial court has the burden of showing reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*).) When there is an inadequate record, we must presume any matters that could have been presented to support the trial court's order were in fact presented, and we may affirm the trial court's determination on that basis. (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.) An appellant's failure to present an adequate record will ordinarily result in the issue being resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [appellants' failure to procure adequate record of attorney fee proceedings mandated that their challenge be resolved

7

against them]; see also *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [appellant's failure to include transcript of hearing foreclosed court's review of claim of error]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447-448 [affirming award of attorney fees under § 12965, where entitlement to fees not challenged and "the record provided by defendant is inadequate to conclude the trial court abused its discretion in determining the fee was reasonable"].)

In his challenge of the attorney fee award here, Stenehjem has procured a record that includes only selected portions of the trial testimony. It is clear that there was significant additional testimony—including additional testimony from Sareen and Stenehjem and testimony from seven other witnesses—that was not included in the appellate record.[5] In evaluating the propriety of the court's exercise of discretion in awarding fees here, we must do so by considering the entire record. (See *SASCO v. Rosendin Electric, Inc.* (2012) 207 Cal.App.4th 837, 849 [trial court's attorney fee award under Civ. Code, § 3426.4, based upon finding that trade secrets claim was objectively specious, reviewed by appellate court for abuse of discretion based upon consideration of entire record]; *Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867, 876 [award of private attorney general attorney fees under Code. Civ. Proc., § 1021.5, is reviewed for abuse of discretion based upon entire record].) Since we have been provided only a partial record from which to consider whether the

---

[5] The clerk's minutes from the trial for December 4-7, 2012, disclose that testimony was provided from the following witnesses on December 5-6, 2012, for which no reporter's transcript was provided: Avinash Ratra, Hanh Pham, Nancy Nguyen, Huang Nguyen, Shilpa Khatua, Ann Eldridge, Debbie Oliveira, Surya Sareen (direct examination by defense and cross-examination by plaintiff), and Jerry Stenehjem (cross-examination by defense and examination by plaintiff). We have obtained the clerk's minutes from the superior court and we hereby take judicial notice of them. (See Evid. Code, § 459, subd. (a).)

trial court abused its discretion in granting Akon's motion for attorney fees, Stenehjem cannot meet his burden of showing error.  (*Ballard*, *supra*, 41 Cal.3d at p. 574.)

Notwithstanding the failure to present an adequate appellate record, we will address Stenehjem's claims of error.

### 2. *Denial of Nonsuit Motion*

Stenehjem argues that the court's denial of Akon's motion for nonsuit is indicative of the fact that the FEHA discrimination claim was not unreasonable, frivolous, or meritless.  He asserts that because his FEHA claim "withstood nonsuit," it should be concluded that "[t]he case had triable issues and extensive conflicting evidence requiring determination by the jury, and was anything but frivolous."

The fact that a plaintiff successfully survived a defense motion for summary judgment or a motion for nonsuit—while a potentially relevant consideration concerning an award of attorney fees to the defendant under section 12965(b)—does not preclude the trial court from finding that the FEHA claim was frivolous, unreasonable or without foundation.  (*Rosenman*, *supra*, 91 Cal.App.4th at pp. 866-867 [denial of summary judgment and nonsuit motions]; *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 923 (*Bond*) [denial of summary judgment motion].)  Because "courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper" (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117), it is not unusual or surprising that the court denied Akon's nonsuit motion here.  (See *Barbosa v. Impco Technologies, Inc.* (2009) 179 Cal.App.4th 1116, 1121 [trial court should "proceed with caution" in granting nonsuit motion]; Cal. Judges Benchbook:  Civil Proceedings—Trial (CJER 2010)  § 9.52, p. 517 [nonsuit motions "are disfavored, especially when made in jury trials after the opening statements"].)  In fact, at the time the trial court denied the nonsuit motion, it commented that the "evidence on [gender discrimination] is weak."  And, at the attorney fees hearing, Judge Arand—in response to the argument of Stenehjem's counsel that the denial of the nonsuit motion showed the claim was not

9

frivolous, vexatious or unreasonable—said: "Barely. Barely. I will just comment as I did at the time. I almost granted it. I came very close because I thought your evidence was quite weak." The fact that the trial court "barely" denied Akon's motion for nonsuit of the FEHA discrimination claim does not preclude a later finding that Stenehjem's claim was frivolous, unreasonable or without foundation. (*Rosenman*, *supra*, 91 Cal.App.4th at pp. 866-867.)

### 3. *"Close" Case/Motion to Strike Juror Declaration*

Stenehjem argues that the discrimination claim he submitted to the jury was a "close" case and that he "very nearly won." (Underscoring omitted.) He claims that "[a]t one point during jury deliberations, seven jurors voted in Stenehjem's favor, and he never had fewer than three votes."

Preliminarily, assuming there was admissible evidence presented below that established the discrimination claim to have been a "close" one, we question the significance of the issue. The existence of a jury verdict for the defense that was not unanimous may provide *some* evidence to support the plaintiff's opposition to an attorney fee award under section 12965(b). (See *Rosenman*, *supra*, 91 Cal.App.4th at p. 871 [noting that plaintiff received the votes of two jurors who accepted her discrimination claim].) But it is ultimately for the trial court to decide—based upon its review of the entire record, including the trial proceedings—whether the discrimination claim was frivolous, unreasonable or without foundation.

### a. Declaration of Juror

Stenehjem's contention that this was a "close" case is based almost entirely on purported facts contained in the declaration of a juror, Harrison Paist, submitted in opposition to the attorney fee motion. In that declaration, Paist noted that (1) "the vast majority" of the deliberations by the jury concerned the FEHA discrimination claim; (2) at one point, the vote was four (for Stenehjem) to eight (for Akon) on the claim; (3) later the vote was seven (for Stenehjem) to five (for Akon) on the claim; and (4) the

10

jury was unable to reach a unanimous decision on the discrimination claim and, ultimately, nine jurors voted in favor of Akon and three voted in favor of Stenehjem.

Akon moved to strike the Paist declaration, arguing that the statements as to any conclusions reached by the jury during deliberations were inadmissible under Evidence Code section 1150. Akon argued that the statute "provides that no evidence is admissible to show the mental processes of a juror." The trial court granted the motion to strike, noting that juror declarations that "in any way attempt to get into the thought processes of the jurors are not admissible." In making its ruling, the court noted that neither party chose to poll the jury, "so there's nothing in the record that shows how the jury voted on these claims." (Cf. *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1130 (*Bell*) [under Code Civ. Proc., § 618, party may poll jury; any challenge to verdict based upon polling must be asserted before jury is discharged].) The court also noted that a statement as to how jurors voted may present a hearsay issue in addition to "get[ting] into their thought processes as to how they intended to vote or didn't." Judge Arand also found the declaration was "not reliable because it comes from a dissenting juror." And she observed: "[Q]uite frankly[,] I don't find it terribly probative in the context of what I need to decide here." Stenehjem contends the court's order striking the declaration was error.

We review evidentiary rulings made in connection with motions for abuse of discretion. (See *Shugart v. Regents of University of Cal.* (2011) 199 Cal.App.4th 499, 505 [evidentiary rulings in summary judgment motions]; *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1348, fn. 3 [evidentiary rulings on special motions to strike under anti-SLAPP statute].) Thus, it is Stenehjem's burden of establishing that the court abused its discretion by striking the Paist declaration, and " 'we will find [such abuse] only if the trial court's order exceeds the bounds of reason.' [Citations.]" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852.)

11

"[W]ith narrow exceptions, evidence that the internal thought processes of one or more jurors were biased is not admissible to impeach a verdict. The jury's impartiality may be challenged by evidence of '*statements* made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is *likely* to have influenced the verdict improperly,' but '[n]o evidence is admissible to show the [actual] effect of such statement, conduct, condition, or event upon a juror . . . or concerning the *mental processes* by which [the verdict] was determined.' [Citations.]" (*In re Hamilton* (1999) 20 Cal.4th 273, 294 (*Hamilton*), quoting Evid. Code, § 1150, subd. (a).) Therefore, "juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict. [Citations.]" (*Bell*, *supra*, 181 Cal.App.4th at p. 1125.) As the California Supreme Court has explained, the principle underlying the exclusion of evidence of jurors' thought processes to impeach the verdict "serves a number of important policy goals: It excludes unreliable proof of jurors' thought processes and thereby preserves the stability of verdicts. It deters the harassment of jurors by losing counsel eager to discover defects in the jurors' attentive and deliberative mental processes. It reduces the risk of postverdict jury tampering. Finally, it assures the privacy of jury deliberations by foreclosing intrusive inquiry into the sanctity of jurors' thought processes." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 414 (*Hasson*).)

The difficulty here is that the declaration of juror Paist was not submitted by Stenehjem to "impeach [the] verdict." (*Hamilton*, *supra*, 20 Cal.4th at p. 294.) Rather, it was submitted as an attempt to support Stenehjem's position that his discrimination claim was not frivolous, unreasonable or without foundation. Thus, it is doubtful that the provisions of Evidence Code section 1150, subdivision (a)—that are triggered "[u]pon inquiry as to the validity of a verdict"—can be said to directly apply. Nonetheless, the policy reasons for the rule of excluding evidence of jurors' internal thought processes as enunciated in *Hasson*, *supra*, pertain to the use of the Paist declaration here. In other

12

words, the exclusion of the Paist declaration—to the extent that declaration seeks to implicitly undermine the strength of the jury's verdict by claiming the vote was not unanimous and that earlier votes were less favorable to the defense—thwarts the use of unreliable evidence of the thought processes of jurors, preserves the stability of verdicts, prevents juror harassment, and assures jury deliberation privacy. (*Hasson*, *supra*, 32 Cal.3d at p. 414.)

The trial court also expressed concern that the Paist declaration may have presented a hearsay issue. To the extent Paist declared how his fellow jurors purportedly voted at any particular time during the deliberative process, such evidence would appear to be inadmissible hearsay since it was offered for the truth of the matter asserted, i.e., the vote count of the jury at various times (how each juror voted). (See Evid. Code, § 1200, subd. (a).) Thus, the court did not abuse its discretion in excluding the evidence on hearsay grounds. (See *People v. Waidla* (2000) 22 Cal.4th 690, 725 [evidentiary rulings, including those based upon hearsay objection, reviewed for abuse of discretion].)

Furthermore, Judge Arand observed that the evidence in the Paist declaration was not "terribly probative in the context of what I need to decide here." The critical question was whether Stenehjem's claim, based upon *the court's evaluation of the evidence*, was frivolous, unreasonable or without foundation. (Cf. *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875-876 [element of lack of probable cause to bring prior suit necessary for malicious prosecution claim is legal question for court to decide].) In light of this task, the court did not abuse its discretion by excluding evidence purporting to show that the case was "close" in the *jury's eyes*, because it was not "terribly probative." (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 [evidentiary rulings, particularly regarding relevance of proffered evidence, are reviewed for abuse of discretion].) We therefore conclude that the trial court did not abuse its discretion in granting the motion to strike the Paist declaration. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679 [no abuse discretion in

13

evidentiary rulings made in connection with motion where court's order did not "exceed[] the bounds of reason"].)

### b. Jury Question

As a remaining issue, Stenehjem claims that a note from the jury foreperson supports the view that "[i]t was such a close call that at one point the jurors declared themselves hung and asked the Court what to do in that case." The question from the jury was: "If we$_{[,]}$ the jury$_{[,]}$ are hung momentarily on form #1 (claim one) [the discrimination claim,] is it possible to move on to the defamation claim while awaiting evidence from the court reporter[?]"

The trial court rejected Stenehjem's interpretation of this note as evidencing that the jury's ultimate decision on the discrimination claim was a "close call." After reading the question from the jury foreperson, Judge Arand observed: "So they weren't asking me what to do about . . . 'being hung$_{[.]}$' [T]hey were waiting for a readback. And I will note that very shortly after they got that readback they came back with a verdict that found in favor of the Defense on that claim. So they never kind of said, ['W]e're hung, what do we do now?[']" They said, ['C]an we move on to claim 2 defamation while we wait for the readback?[']" The trial judge thus considered and rejected Stenehjem's argument that the jury question was evidence that the jury's ultimate verdict on the discrimination claim was a "close call." Judge Arand—having presided over the entire trial—was in a much better position than this court to determine whether the jury question or anything else that transpired during the trial indicated the jury had a difficult time arriving at a defense verdict on the discrimination claim.

Accordingly, Stenehjem's argument that he was nearly successful in obtaining a favorable verdict on his discrimination claim and that the court therefore abused its discretion in finding the claim frivolous and unreasonable is without merit.

####               4.      *Prima Facie Showing*

Stenehjem contends the trial "[c]ourt did not find that [he] failed to establish a prima facie case [of gender discrimination] or that he failed to demonstrate pretext." He argues that he established that the reasons Akon gave for his termination were pretextual and that he showed "this was a classic case of disparate treatment." But the record shows that the court did not abuse its discretion in concluding that Stenehjem's discrimination claim was frivolous and unreasonable.

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) This test is commonly referred to as the *McDonnell Douglas* test, referring to *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. Under this test, "plaintiff [has] the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims . . ." (*Guz*, at p. 354.) "[T]he plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. [Citations.]" (*Id.* at p. 355.) If the plaintiff establishes this prima facie case, "the burden [then] shifts to the employer to rebut the presumption [of discrimination] by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.]" (*Id.* at p. 355-356.) "If the employer sustains this burden, the presumption of discrimination disappears." (*Id.* at p. 356.)

Judge Arand made specific and detailed remarks at the hearing on Akon's motion for attorney fees to support her findings that the discrimination claim was frivolous and unreasonable. She observed that "[t]he evidence from many witnesses was fairly

overwhelming that the Plaintiff was abusive to women, occasionally men, and even made explicit racial comments in the workplace. He would yell at people, he would swear at people, directed specifically to people . . . There was even evidence that the Plaintiff stalked a woman co-worker. Apparently the Defendant didn't know about that at the time, but it was evidence that came out at trial." Judge Arand also noted there was "a south Asian woman, who would not follow [Stenehjem's] instructions . . . and he called her, and I forget the exact phrase, ['] princess['] was part of it, but he made a very derogatory both racial and offensive comment to her." The trial judge observed further that "Mr. Stenehjem was not treated differently from women in the workplace." No woman employee "behaved in a similar manner [as Stenehjem] and was not terminated." Judge Arand concluded there was no evidence Stenehjem was terminated because of gender; rather, the evidence was that "he was fired because of his conduct."

Judge Arand also addressed Stenehjem's claim that he was provoked by a coworker, Hanh Pham, and that Hanh[6] had assaulted him in an incident on January 20, 2011, the day of his termination. Judge Arand noted that Stenehjem's "recitation of facts is somewhat skewed from . . . the evidence that I heard at trial, and I do find the Defendant's descriptions of the facts more closely represent the evidence." She concluded, after reviewing video evidence that was presented at trial of an incident on the morning of January 20, 2011, that the video did not show that Hanh had assaulted Stenehjem. Rather, Judge Arand indicated the video showed that Stenehjem approached Hanh, got "very close" to her, and was "definitely in her personal space. . . . [He] appears to be at least touching her at times, not with his hands per se, but he does push past her in an effort to get to a desk. [¶] She is putting up her hands and the video is consistent with

---

[6] We understand that Vietnamese names generally consist of family name, middle name, and given name, in that order. Under this convention, the employee's surname is Hanh. She is often referred to in the record by that name, and we will do so here.

her testimony that she was trying to . . . get him to back up, to get away, and to stop, to get away from the employee she supervised. . . . In this context I see him as sort of the aggressor, he was there going to them." Judge Arand concluded that there was "certainly no evidence that any women screamed obscenities in anger at men. I see nothing that suggests that any woman came into [Stenehjem's] personal space."

Stenehjem argues that he showed at trial that his male coworkers also swore in the workplace, and that based upon this evidence, "a factfinder could reasonably infer that Akon's purported reason for discharge (foul language) was pretextual." Judge Arand addressed this point. She contrasted the use of profanity in the workplace with using profanity *directed at* specific coworkers. Judge Arand concluded: "There was no evidence that other employees used foul language directed to other employees, only that it was used sometimes in the workplace. And certainly none that suggested that other people were sworn at in the manner that Mr. Stenehjem did and that he admitted he did."

In support of his claim of pretext, Stenehjem asserts that "Akon's story changed" and that Akon initially claimed he was fired because of an "assault and shoving." Citing *Guz*, *supra*, 24 Cal.4th at pages 355 to 356, he asserts that "evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias." His argument is without merit.

First, although there was some evidence—disputed by Defendants—that Sareen told Akon employees on the afternoon of January 20, 2011, that Stenehjem had shoved a female coworker, there was no evidence that Stenehjem was told by anyone at Akon that he was being terminated because he had assaulted a female coworker. Furthermore, even assuming Sareen may have told some Akon employees during a meeting that Stenehjem had shoved a female coworker, and that discussion constituted "evidence of dishonest reasons" (*id.* at p. 356), that is of no consequence unless Stenehjem presented a prima facie case of discrimination.

17

Here, the trial court found that Stenehjem had presented no evidence he was subject to discriminatory treatment (i.e., termination of his employment) because of his gender.  Judge Arand concluded that (1) Stenehjem was not treated differently than female coworkers; (2) he was not terminated because of his gender; (3) no female worker acted in a manner similar to Stenehjem and was not terminated; and (4) while there was profanity in the workplace, Stenehjem's use of profanity was different in that it was *directed at* coworkers.  The limited record before us supports these findings, including there being evidence that a male employee assumed Stenehjem's job duties after he was terminated.  As the California Supreme Court noted in *Guz*:  "[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons.  The pertinent statutes do not prohibit lying, they prohibit discrimination.  [Citation.]  Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons.  [Citation.]  Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.  [Citation.]" (*Guz*, *supra*, 24 Cal.4th at pp. 360-361, original italics.)

Thus, contrary to Stenehjem's contention, the trial court clearly found that Stenehjem did not present a prima facie case of gender discrimination.  Judge Arand concluded—based upon all of the evidence presented at trial—that Stenehjem "exhibited both conduct and words that were deeply offensive, and his behavior at times was outrageous.  The Plaintiff did not present evidence that would support any finding that [he] was fired because of his gender.  It was clear to me he was fired because of his conduct."  We see nothing in the limited record submitted on appeal that would compel us to question these findings or to otherwise conclude that the trial court's conclusion that the discrimination claim was frivolous and unreasonable was an abuse of discretion.

18

### 5.     *Sareen's Deposition Testimony*

Stenehjem argues that Sareen's deposition testimony constituted direct evidence of discrimination.  He asserts that "[d]uring Sareen's deposition, it became obvious that gender bias was a significant factor in the decision to terminate Stenehjem and [to] conduct no investigation whatsoever."

The deposition testimony to which Stenehjem refers—and which was read to the jury—was Sareen's response to a question about what he was told by Avinash Ratra, Akon's vice president, about Stenehjem's interactions with female coworkers on January 20, 2011.  Sareen said:  " 'I don't . . . recall exact details.  But some incident occurred and there was some shoving and foul language and some physical proximity . . . those are [my] paraphrases.  I don't remember exact words.  But I said, . . . ["]We can't have that toward woman employees. . . By tall male employees[;] and we have to let him go.["] ' "

In the same vein, other deposition testimony from Sareen was read at trial:  " '. . . Mr. Ratra came and described something to the effect that, you know, some foul language, getting physically very close, et cetera, . . . to a woman employee.  I mean, if you're five-foot-two, and a six-foot-five person gets right in front of you, it's not acceptable behavior from a male employee.' "  In response to a question in deposition as to why he did not attempt to " 'get [Stenehjem's] side of the story before you fired him,' " Sareen responded:  " 'In my book, for a male, tall employee, no matter what, to be behaving like that toward a woman employee, has no place in the workplace, period.' "  Additional deposition testimony was read at trial in which Sareen said:  " 'For a fifth time, independent of the causes, independent of the reasoning, for a tall, male employee, independent of his reasoning, to be in the face of a woman employee, in my book, which I will defend to any authority, is a no[-]no in the workplace.' "

Stenehjem similarly argued at the hearing on the motion for attorney fees that Sareen's direct statements demonstrated gender discrimination because of his making "the distinction between a male and a female in statements over and over again."  But

19

Judge Arand specifically addressed and rejected this argument: "I do agree with the Defense that the Plaintiff has taken Mr. Sareen's words out of context. Simply because he used a word that references the Plaintiff's gender in describing the reasons to terminate him, that he said a . . . 'man could not do the things that he did,' is not sufficient to make a prima facie case for discrimination. And here I do feel that it's appropriate for me to consider the totality of the evidence that was presented about the reasons for Mr. Stenehjem's termination. [¶] I do find that Mr. Sareen was accurately describing his obligation to protect his employees in the workplace, and that the evidence at trial, the serious misconduct by the Plaintiff who happened to be a male employee, against female employees. This Defendant was at risk of claims of a hostile work environment and sexual harassment if [Stenehjem] was not terminated." Judge Arand also noted: "The Plaintiff had no evidence that any female behaved in a similar manner and was not terminated. The only fact that Plaintiff was relying on was that Mr. Sareen mentioned in describing his reasons for termination was that the Plaintiff is a man. As I heard the testimony[,] Mr. Sareen was clear that a man could not be allowed to mistreat women employees. That does not mean that the Plaintiff was treated differently from women or that women would be allowed to mistreat other employees."

It bears repeating that Judge Arand heard all of the evidence, while the trial record before us is incomplete and does not include the testimony of numerous witnesses. (See fn. 5, *ante*.) We conclude that it was proper for Judge Arand to consider Sareen's deposition testimony in the context of all of the evidence adduced at trial—including part of the testimony Sareen gave at trial that is not part of the limited appellate record—and, in doing so, rejecting Stenehjem's characterization of Sareen's deposition testimony as evidence of gender discrimination.

### 6.    *Additional Considerations*

The trial court considered all of the evidence adduced at trial, including testimony from Stenehjem, Sareen, and other Akon employees. It also viewed videotape evidence

20

of two encounters between Stenehjem and female coworkers on the day of his termination.[7] The court concluded that Stenehjem was terminated due to his misconduct, not because of his gender.

Additionally, the trial court was presented with evidence in connection with the motion for attorney fees that was not part of the trial that was relevant in determining whether the discrimination claim was frivolous or unreasonable. This included evidence that neither Stenehjem nor his attorney ever asserted a discrimination claim, even though Stenehjem, both through counsel and directly, engaged in approximately seven months of prelawsuit communications with Defendants' attorney. Further, when Stenehjem initially filed suit in September 2011, he did not allege a claim for discrimination. The court itself noted that Stenehjem did not initially allege a discrimination claim, but did so only after his deposition was taken. And, the first amended complaint that finally included a claim for discrimination under the FEHA made allegations only in the most generic of terms (i.e., Stenehjem's "sex, gender, race, national origin, ancestry, and color were substantial factors in Defendants' decisions to terminate his employment"), which resulted in the sustaining of a demurrer to that pleading. The trial court observed that the inclusion of

---

[7] At oral argument, Stenehjem's counsel urged that a videotape of an encounter between Stenehjem and a coworker on the afternoon of January 20, 2011—depicted in a video exhibit identified as Stock Room-Production B and Stock Room Production C at approximately 4:09 p.m. to 4:13 p.m. from Camera 12—was critical evidence in support of his appeal. Specifically, he asserted that that the videotape refutes the allegation that he assaulted a coworker, and therefore supports his defamation claim in which he alleged that Defendants falsely and maliciously stated that he "had physically assaulted and battered a petite female coworker." Since the issue here is whether Stenehjem's gender discrimination claim under the FEHA was frivolous and unreasonable, we question the relevance on appeal of the videotape evidence concerning Stenehjem's defamation claim decided against him by the jury. We have nonetheless reviewed the videotape of the encounter between Stenehjem and the coworker on the afternoon of January 20, 2011. That review does not alter our conclusion that the trial court did not abuse its discretion in finding that Stenehjem's FEHA discrimination claim was frivolous and unreasonable.

the FEHA claim "kind of upped the ante in the case" and that most of the substantial damages Stenehjem claimed at the settlement conference were related to the discrimination claim. Furthermore, as Judge Arand also noted, Stenehjem at trial dropped any claim of discrimination based upon race or national origin. Although his proposed jury instructions included the phrase "gender, ethnicity, or national origin," Stenehjem submitted to the jury a claim for gender discrimination only.

Finally, the trial court appropriately considered Stenehjem's financial condition in conjunction with deciding whether to award attorney fees to Akon. (See *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1203 [court must consider plaintiff's ability to pay before awarding attorney fees to defendant under § 12965(b)]; accord, *Robert*, *supra*, 224 Cal.App.4th at p. 70.) The trial court acknowledged that it need not make an express finding that the plaintiff has the ability to pay attorney fees as long as it considered the issue. Judge Arand considered Stenehjem's ability to pay, noting: "I don't have terribly much information. I have some, that he doesn't have a lot of ability to pay." She also observed that although there was evidence Stenehjem had made efforts to obtain employment, his efforts "seemed to have stopped" as of the time of trial. Judge Arand concluded under the circumstances that an attorney fee award "of a modest amount is appropriate" and awarded $10,000 to Akon. In its written order, the court indicated that it had taken Stenehjem's ability to pay into account, and "[found] that the amount of $10,000 should not threaten Mr. Stenehjem with financial ruin, but does not reward the continued pursuit of frivolous claims." In light of Akon's request for attorney fees of more than five times the amount awarded, we conclude that the court did not abuse its discretion in assessing the $10,000 fee award after considering Stenehjem's financial status.

In its formal order, the court made an express finding pursuant to *Christiansburg*, *supra*, 434 U.S. 412 that Stenhejem's discrimination claim was frivolous and unreasonable. It also referred in the order to "the reasons recited on the record" as its

support for these findings.  While it is true that appellate courts have generally required that the trial court make express written findings in support of an attorney fee award to the defendant under section 12965(b) (see, e.g., *Rosenman*, *supra*, 91 Cal.App.4th at p. 868), we conclude that the trial court's incorporation by reference of its reasons as they were recited at the attorney fees hearing satisfies the express written findings requirement.  Moreover, since it plainly appears from the transcript of the attorney fees hearing that the court applied the proper *Christiansburg* standards, the court's failure to set forth its specific reasons in support of its conclusion that the discrimination claim was frivolous and unreasonable does not warrant reversal of the award.  (See *Robert*, *supra*, 224 Cal.App.4th at p. 72 [where court made express oral findings showing it applied correct standards, failure to put findings in writing not prejudicial and not a basis for reversal of fee award].)

The trial court found that Stenehjem's gender discrimination claim under the FEHA was frivolous and unreasonable, concluding that he had presented no evidence that his employment termination was due to his gender.  There is no basis for concluding here that " 'the trial court exceeded the bounds of reason.'  [Citation.]"  (*Dove Audio*, *supra*, 47 Cal.App.4th at p. 785.)  Thus, the court did not abuse its discretion in making these findings and in awarding attorney fees to Akon under section 12965(b).  (*Chavez*, *supra*, 47 Cal.4th at p. 989.)

## DISPOSITION

The order awarding attorney fees is affirmed.

_____
                                   Márquez, J.


WE CONCUR:



_____
     Bamattre-Manoukian, Acting P.J.




_____
     Grover, J.